1999-NMCA-118

987 P.2d 420

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Samuel J. MORRO, Defendant–Appellant.**

**No. 19,731.**

Court of Appeals of New Mexico.

July 9, 1999.

Certiorari Denied, No. 25,876, Aug. 30, 1999.

Patricia A. Madrid, Attorney General, Elizabeth Blaisdell, Assistant Attorney General, Santa Fe, for Appellee.

Phyllis H. Subin, Chief Public Defender, Will O'Connell, Assistant Appellate Defender, Santa Fe, for Appellant.

## OPINION

HARTZ, Judge.

{1} Defendant appeals his convictions on ten counts of defacing tombs, in violation of NMSA 1978, § 30–12–13 (1989). His sole contention is that the district court should have merged the ten counts into one because damage to ten gravestones during a single criminal episode, with a single intent, constitutes only one violation of the statute. We disagree and affirm the convictions.

## I. BACKGROUND

{2} In the early morning of June 15, 1997, Hobbs police officer Mark Herrera investigated a report of vandalism at the Prairie Haven Cemetery. He found damage to ten gravestones. Herrera noticed Defendant watching the investigation from his home across the street from the cemetery. Upon being questioned by Herrera, Defendant admitted to the vandalism. Defendant found the sledgehammer that he had used to damage the gravestones and gave it to Herrera.

{3} In a recorded statement Defendant explained that he went to the cemetery to damage Kristi Martinez's gravestone as a way of "disrespecting" a man who had been Kristi's boyfriend. This man had hit him in the mouth a few days earlier and had come by his house on the night of the incident, threatening to fight him again. After the man left, Defendant drank a fifth of whiskey, grabbed a sledgehammer, and went to the cemetery. He destroyed Kristi's gravestone and then attacked the other gravestones because he was "just pissed off." When asked whether he knew how many gravestones he had damaged, he answered, "No, I just know that one, for sure."

{4} Defendant was charged in magistrate court with ten counts of defacing tombs. He filed a motion to merge his ten counts into one, but the court denied the motion. After a bench trial Defendant was convicted on all ten counts. He was sentenced to 364 days in jail on each count, with the sentences to run consecutively. He was also fined $1,000 on each count. All jail time and fines were to be suspended upon Defendant's payment of res-

titution of $5982.34. The total damage to the gravestones was $13,137.33, but all except $5982.34 was covered by insurance.

{5} Defendant then exercised his right to a de novo appeal in district court. *See* NMSA 1978, §§ 35–13–1 (1975), 35–13–2 (1996); Rule 6–703 NMRA 1999. Before trial he moved to dismiss nine of the ten counts or, in the alternative, to merge the ten counts into one. The district court denied the motion. Defendant was found guilty after a bench trial. The district court sentenced Defendant to 364 days in jail on each count. The sentences on counts I through III were ordered to run consecutively to each other, and the sentences on counts IV through X were ordered to run concurrently with each other and consecutively to the sentence on Count III. The court suspended the sentences on counts IV through X and placed Defendant on probation for 364 days upon release from confinement. One condition of probation was that Defendant pay restitution of the full damages of $13,137.33.

{6} Defendant contends that the district court erred as a matter of law in refusing to limit prosecution to a single count of defacing tombs. He argues that (1) "the statute does not manifest legislative intent for multiple punishments for a single criminal transaction"; (2) policy considerations compel merger of Defendant's ten convictions; and (3) even if multiple punishments may be permissible in some circumstances, "there is insufficient evidence of [Defendant's] separate criminal intent to damage each headstone, and thus insufficient evidence to support more than one count." He notes, correctly, that if multiple punishments are not authorized by statute, the punishments violate the constitutional prohibition against double jeopardy. *See Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *Herron v. State,* 111 N.M. 357, 359, 805 P.2d 624, 626 (1991).

## II. *DISCUSSION*

{7} Defendant was convicted of multiple violations of one statute. Whether that was permissible depends upon our determination of the proper unit of prosecution for the statute. Is the unit of prosecution damage to a single gravestone, one episode of damaging gravestones, or something in between?

{8} Because the general law on the subject was recently summarized by our Court in *State v. Barr,* 1999–NMCA–081, ¶¶ 9–23, 127 N.M. 504, 984 P.2d 185, we need not retread the same ground in detail. We set forth only a few propositions that govern this case.

{9} To begin with, the unit of prosecution is a matter for legislative determination. *See Herron,* 111 N.M. at 359, 805 P.2d at 626 (the issue is one of statutory construction); *Swafford v. State,* 112 N.M. 3, 13, 810 P.2d 1223, 1233 (1991). If the statute is explicit, we must follow the statute. For example, in 1995 the Legislature amended the embezzlement statute to add the following sentence: "Each separate incident of embezzlement or conversion constitutes a separate and distinct offense." NMSA 1978, § 30–16–8 (1995). The amendment was apparently a response to the decision in *State v. Brooks,* 117 N.M. 751, 877 P.2d 557 (1994), and overrides anything to the contrary in *Brooks.*

{10} Ordinarily, however, the Legislature is not so explicit. Then the courts must rely on presumptions. One presumption is that a defendant can be prosecuted for two separate offenses if the defendant's acts are "separated by sufficient indicia of distinctness." *Swafford,* 112 N.M. at 13, 810 P.2d at 1233. In *Barr* we wrote:

> In determining whether an act is distinct in the specific context of a unit-of-prosecution case, the *Herron* court looked at the following factors: (1) temporal proximity of the acts; (2) location of the victim(s) during each act; (3) existence of an intervening event; (4) sequencing of acts; (5) defendant's intent as evidenced by his conduct and utterances; and (6) the number of victims.

*Barr,* 1999–NMCA–081, ¶ 16, 127 N.M. 504, 984 P.2d 185. A factor of particular importance is the last one. *See id.*

{11} Thus, in deciding the appropriate unit of prosecution under a statute, we do not start from scratch with every new statute

and somehow attempt to divine unexpressed legislative intent. When the statutory language provides no answer, we have what amounts to a canon of construction. If analysis of the six factors indicates that two acts constitute separate offenses under the statute, we will presume that to be the legislative intent, until the Legislature amends the statute to indicate otherwise. By the same token, when the factors indicate that the acts constitute a single offense, we will rule accordingly, until directed otherwise by the Legislature.

{12} In applying these factors, we will examine the elements of the offense and any policy underlying the specific statute. But we need look no further for general policy regarding the appropriate unit of prosecution. That general policy has been set by the six-factor approach.

{13} We now turn to the statute violated by Defendant. Section 30–12–13 states:

Defacing tombs consists of either:

A. intentionally defacing, breaking, destroying or removing any tomb, monument or gravestone erected to any deceased person or any memento, memorial or marker upon any place of burial of any human being or any ornamental plant, tree or shrub appertaining to the place of burial of any human being; or

B. intentionally marking, defacing, injuring, destroying or removing any fence, post, rail or wall of any cemetery or graveyard or erected within any cemetery or graveyard or any marker, memorial or funerary object upon any place of burial of any human being.

Whoever commits defacing a tomb is guilty of a misdemeanor and shall be punished by a fine of not more than one thousand dollars ($1,000) or by imprisonment for a definite term less than one year or both.

{14} The statute does not express the intended unit of prosecution. The State argues that the use of the singular forms of "gravestone," "marker," "memorial," "tomb," "memento," and "monument" show that the Legislature intended to protect each gravestone as a unit. *See Ebeling v. Morgan*, 237 U.S. 625, 35 S.Ct. 710, 59 L.Ed. 1151 (1915) (under statute prohibiting injuring a mail bag with intent to steal mail, defendant could be convicted on separate counts for each mail bag injured in one criminal episode). But Defendant points out that the words "plant," "tree," "shrub," "fence," "post," and "rail" are also singular. In Defendant's view the Legislature could not have meant "to parse out different crimes based simply on damage to discrete physical objects" and it would be "absurd" to believe that the Legislature intended to punish damage to each post or plant as a separate misdemeanor.

{15} The parties' arguments make clear that grammatical analysis cannot resolve the issue before us. Guided by *Herron* and *Barr*, we believe that determination of the proper unit of prosecution requires an analysis of the interests protected by the statute. Once we have an understanding of who the victims are, we can apply the *Herron–Barr* analysis appropriately.

{16} The parties have suggested four different, albeit related, purposes behind the statute. The State argues that the legislation's purpose is to prevent property damage; to prevent damage to "the dignity of the memorial to the deceased"; and to prevent "the emotional injury to surviving family and friends of the deceased." Defendant contends that "the statute evinces an intent to protect the interests of society as a whole in [a cemetery] rather than the rights of any particular individual." In Defendant's view the statute is not concerned with ownership of property, and therefore it is inappropriate to "break a single incident of vandalism down into discrete acts based on ownership."

{17} Where we differ from Defendant is that we do not view the suggested purposes as mutually exclusive. The statute can protect the specific interests in individual burials as well as general interests in the sanctity of the cemetery as a whole. Indeed, protection of those specific interests is probably the dominant purpose of the statute. As expressed in *State v. Jackson*, 218 N.C. 373, 11 S.E.2d 149, 151 (1940): "The thought underlying the erection of a tombstone or marker at the grave of a deceased person is that of permanency. Its purpose is to designate the spot where the deceased was buried, to per-

petuate his name and to record biographical data as to birth, death, etc." The emotional attachments to the individual grave also cannot be discounted. Injury to a marker will offend the relatives and close friends of the decedent. Moreover, the Legislature may well have viewed the decedents themselves as victims. The statute honors the desire of the living to be recognized and respected after their own deaths.

{18} In sum, several legitimate purposes support this statute. The purpose to protect the cemetery as a whole is compatible with the purpose to protect the separate interests associated with each gravestone. In some circumstances the only injury from cemetery desecration may be to the general interest of the public. Perhaps a person who damaged several common elements of a cemetery, such as several sections of perimeter fence, or several shrubs planted along the walkways, could be prosecuted for only one offense. The present case, however, concerns separate gravestones representing distinct interests.

{19} We now turn to the *Herron–Barr* factors:

(1) temporal proximity of the acts; (2) location of the victim(s) during each act; (3) existence of an intervening event; (4) sequencing of acts; (5) defendant's intent as evidenced by his conduct and utterances; and (6) the number of victims.

*Barr*, 1999–NMCA–081, ¶ 16, 127 N.M. 504, 984 P.2d 185. As previously noted, the sixth factor can be particularly compelling. " '[M]ultiple victims will likely give rise to multiple offenses.' " *Id.* (quoting *Herron*, 111 N.M. at 361, 805 P.2d at 628). In our view, that proposition applies here. To be sure, no person suffered physical injury from Defendant's rampage; and it is unclear whether the evidence at trial (as opposed to the evidence on the issue of restitution) indicated how many persons suffered pecuniary injury. Also, the injury to general community sensibilities is essentially the same for each gravestone. Nevertheless, each gravestone represents distinct interests protected by the statute. Injury to each gravestone causes injury to the memory of a different person and is likely to cause emotional dis-

tress to a different collection of living persons. That circumstance is a strong indicator that destruction to each gravestone is a distinct offense. *Cf. Swafford*, 112 N.M. at 14–15, 810 P.2d at 1234–35 (defendant can be prosecuted for violating two different statutes as result of committing a single, unitary act if the statutes protect distinct social norms).

{20} The other factors do not compel a different result. On one hand, the destruction was apparently one continuous episode (there was no intervening event) and Defendant's mental state was apparently an undifferentiated rage (although perhaps his intent with respect to Kristi Martinez's gravestone can be distinguished from his intent with respect to the others). But on the other hand, each gravestone was injured by a separate act, in a separate place, at a separate time.

{21} There is, however, one ground for pause before we conclude our analysis. That ground is the single-larceny doctrine. Under this doctrine the taking of property belonging to different owners at the same time and place should be prosecuted as one larceny. *See State v. Brown*, 113 N.M. 631, 634, 830 P.2d 183, 186 (Ct.App.1992). *See generally* 3 Charles E. Torcia, *Wharton's Criminal Law* § 347 (15th ed.1995); Daniel H. White, Annotation, *Single or Separate Larceny Predicated Upon Stealing Property From Different Owners at the Same Time*, 37 A.L.R.3d 1407 (1971). A related proposition is that when a thief "takes several small amounts (in the aggregate comprising a large total) from different victims at one time and place (as where, during a tea party downstairs, the thief searches the bedroom where several ladies' purses have been stowed, taking ten dollars from each of ten purses), the takings may, by the great weight of authority, be aggregated; it might be said that such takings are necessarily part of one scheme." 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 8.4 at 353–54 (1986).

{22} The single-larceny doctrine is a departure from the general rule that multiple charges are appropriate when there are mul-

tiple victims. But its adoption does not signal abandonment of the general rule. When we recently reaffirmed the doctrine, we noted that it may not apply to the crime of robbery. *See Brown,* 113 N.M. at 634, 830 P.2d at 186. And when our Supreme Court chose to apply the doctrine to embezzlement in *Brooks,* 117 N.M. at 753–54, 877 P.2d at 559–60, the Legislature soon rejected the decision. *See* § 30–16–8.

{23} The single-larceny doctrine could be justified purely on historical grounds. After all, a court's determination of the proper unit of prosecution is an exercise in statutory interpretation. When there is a long history regarding the unit of prosecution under a particular statute, as there is with the single-larceny doctrine, then principles of stare decisis in statutory interpretation argue strongly for continuing that interpretation, even when the tools—that is, canons—of statutory interpretation have evolved with respect to analyzing the question. *See Patterson v. McLean Credit Union,* 491 U.S. 164, 172–73, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (stare decisis has "special force" in statutory interpretation). Thus, it is not surprising that we reaffirmed the single-larceny doctrine using the *Herron* approach, *see Brown,* 113 N.M. at 632–34, 830 P.2d at 184–86, even though prior decisions had used a different analysis in support of the doctrine, *see State v. Klasner,* 19 N.M. 474, 477–78, 145 P. 679, 680 (1914); *State v. Boeglin,* 90 N.M. 93, 94–96, 559 P.2d 1220, 1221–23 (Ct.App.1977).

{24} In any event, there are important features of the crime of larceny that can explain why the existence of multiple victims may not be dispositive. First, as noted in *Brown,* 113 N.M. at 633, 830 P.2d at 185, the statute defines larceny as "the stealing of anything of value which belongs to another," NMSA 1978, § 30–16–1 (1987), and does not require proof of ownership in a particular person. If a bag of jewelry contains rings belonging to a number of different people, the prosecution need not establish the specific owner of each ring, so long as it proves that the owner or owners were persons other than the defendant. Consequently, the offense is the same regardless of whether the number of owners of rings is one, two, or twenty. This feature of the statute was an important factor in our reaffirming the single-larceny doctrine in *Brown.*

{25} An additional feature of the larceny statute is that the penalty for the offense depends on the value of the goods taken. *See* § 30–16–1. For example, if the value of the goods is $100, the offense is a petty misdemeanor, *see id.;* but if the value exceeds $20,000, the offense is a second degree felony, *see id.* Thus, even though taking additional items may not increase the number of charges, it may increase the possible punishment. The single-larceny doctrine is not just an ameliorative doctrine to aid defendants; it may also hurt the defendant by, say, treating as a felony what would otherwise be multiple misdemeanors. In contrast, if we were to adopt Defendant's view of Section 30–12–13, there would be no additional statutory penalty for continuing a destructive episode to include more and more gravestones.

{26} We recognize the tension between the single-larceny doctrine and the general rule expressed in *Herron* and *Barr* that "'multiple victims will likely give rise to multiple offenses.'" *Barr,* 1999–NMCA–081, ¶ 16, 127 N.M. 504, 984 P.2d 185 (*quoting Herron,* 111 N.M. at 361, 805 P.2d at 628). We are persuaded, however, that the general rule should apply to the defacing-tombs statute. Special factors present under the larceny statute are not present here. Accordingly, we affirm Defendant's convictions on ten counts of violating Section 30–12–13.

### III. *CONCLUSION*

{27} We affirm Defendant's convictions.

{28} **IT IS SO ORDERED.**

BOSSON and WECHSLER, JJ. concur.