Certiorari Denied, No. 31,983, November 3, 2009

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-132**

**Filing Date:   September 17, 2009**

**Docket No. 27,168**

**STATE OF NEW MEXICO,**

**Plaintiff-Appellee,**

**v.**

**HENRY A. RIVERA,**

**Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Denise Barela Shepherd, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Joel Jacobsen, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Susan Roth, Assistant Appellate Defender
Santa Fe, NM

for Appellant

1

**OPINION**

**SUTIN, Judge.**

**{1}**     Appellant filed a motion for rehearing requesting this Court to add certain authority to allow Appellant to pursue ineffective assistance of counsel in a later habeas proceeding. We have granted the motion. We withdraw the opinion filed on August 19, 2009, and we substitute this opinion in its place.

**{2}**     Defendant Henry A. Rivera appeals from convictions of racketeering, fraud, securities fraud, and two other securities-related criminal offenses. Defendant obtained funds from investors for the stated purpose of making certain investments in real estate. In exchange for the funds delivered by the investors, Defendant gave promissory notes to those investors. The primary issues on appeal are claims of insufficient evidence to support his racketeering conviction and claims of double jeopardy with respect to his many securities-related convictions. Defendant also raises several other issues. We hold that there was insufficient evidence to convict Defendant of racketeering, and we reverse that conviction. We affirm Defendant's remaining convictions.

**BACKGROUND**

**{3}**     Defendant told six investors that he would obtain a pool of capital and use it to buy investment properties from the Resolution Trust Corporation. Defendant obtained funds from these investors for that purpose and in return gave each of them a promissory note, pursuant to which Defendant would repay principal, with interest, within a short period of time. The notes were prepared on documents containing one of two letterheads, namely, Building for the Future or Henry A. Rivera Enterprises. The notes stated that "the undersigned Henry A. Rivera Enterprises" promised to pay the amounts indicated in the notes, and the notes were signed "Henry A. Rivera." Defendant failed to inform the investors that he had civil judgments against him, that he was having financial difficulties, and that some of his own properties had been foreclosed. According to a financial investigator with the attorney general's office, Defendant used funds received from newer investors to pay on notes of earlier investors. When a note became due, usually the investor rolled over his or her investment and interest, and Defendant would issue another note. In the long run, however, Defendant did not make good on the notes. Each investor lost a considerable sum of money.

**{4}**     With respect to the transactions with the six specific investors, Defendant was indicted in August 1994 on several criminal offenses. The charges were ordinary fraud in violation of NMSA 1978, Section 30-16-6 (1987) (amended 2006); securities fraud in violation of NMSA 1978, Sections 58-13B-30 and -39 (1986) (repealed 2009); selling unregistered securities in violation of NMSA 1978, Sections 58-13B-20 (1986) (amended 1997 and repealed 2009) and Section 58-13B-39; and transacting business as a securities broker-dealer without a license in violation of NMSA 1978, Section 58-13B-3 (1986) (repealed 2009) and Section 58-13B-39. Defendant was finally arrested in October 2003, and the charges resulted in Defendant's conviction in April 2006 on four separate offenses as to each of the six investors, totaling convictions on twenty-four counts. Defendant

claims on appeal that the six convictions for fraud violate double jeopardy, in that the Legislature did not intend to punish convictions for both fraud and securities fraud. He also claims that the six convictions for transacting business as a securities broker-dealer without a license and the six convictions for selling unregistered securities violate double jeopardy, in that the Legislature intended punishment only for one course of conduct each.

**{5}** Defendant also engaged in the same conduct with at least fourteen other investors who were given promissory notes and who suffered losses. With respect to these fourteen transactions, Defendant was convicted in April 2006 of one count of racketeering, in violation of NMSA 1978, Section 30-42-4(C) (1980) (amended 2002), which is contained in the Racketeering Act, NMSA 1978, §§ 30-42-1 to -6 (1980, as amended through 2002). Defendant claims on appeal that the State did not present sufficient evidence to prove the existence of an enterprise, which is an essential element for a racketeering conviction.

**{6}** Several witnesses in addition to the six investors testified for the State. An FBI special agent testified regarding Defendant's arrest by Mexican authorities on September 18, 2003, as well as the events that resulted in Defendant's transport to the United States the same day. The financial investigator, as mentioned earlier in this opinion, demonstrated that Defendant paid earlier investors with money received from newer investors and testified that Defendant did not actually invest the money in anything. A title company employee testified that Defendant's properties located within Taos County, New Mexico were highly mortgaged and also that investors who thought their loans were secured by collateral had been deceived because no mortgage was filed, because Defendant did not own the property he offered as collateral, or because the property was already encumbered by substantial prior mortgages. The director of the New Mexico Securities Division summarized the purposes of the Securities Act of 1986, NMSA 1978, §§ 58-13B-1 to -57 (1986, as amended through 2003) (repealed 2009), and gave definitions of a "security" and a "Ponzi scheme."

## DISCUSSION

### I. The Racketeering Issue

**{7}** Count 29 in the indictment charged Defendant with racketeering "[w]hile associated with an enterprise, namely[,] a sole proprietorship which on occasion operated in association with an entity known as Henry A. Rivera Enterprises and/or Building [f]or the Future in the purported operation of a real estate investment business." The indictment was not read or otherwise given to the jury. The elements instruction on the racketeering violation referred to the indictment count number but did not refer to the racketeering statute, and stated in pertinent part:

> For you to find the [D]efendant guilty of racketeering, as charged in Count 29, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. The Defendant was associated with an enterprise.

3

2.      While associated with that enterprise, the Defendant intentionally, and, directly or indirectly, participated or conducted the affairs of the enterprise by engaging in a pattern of racketeering activity.

3.      The pattern of racketeering activity includes two or more of the crimes of:

A.      Fraud in excess of $20,000 as charged in Counts 1, 5, 9, 13, 21[,] and 25; and/or[]

B.      Securities Fraud as charged in Counts 2, 6, 10, 14, 22[,] and 26[.]

Defendant argues that the State failed to establish that he associated with others in a common purpose and that the State thereby failed to prove the element of an "enterprise" necessary for a racketeering conviction.

## A.      Standard of Review

{8}      Whether Defendant's activities constituted an association with others has been analyzed by this Court employing both statutory interpretation analysis using a de novo review and then a sufficiency of the evidence review of the particular facts in each case. *See State v. Rael*, 1999-NMCA-068, ¶¶ 5-12, 127 N.M. 347, 981 P.2d 280 (determining whether the defendant's association with others constituted an enterprise is a matter of statutory interpretation and a question of law requiring de novo review, and holding that the evidence of an enterprise was insufficient to convict the defendant), *rev'd on other grounds sub nom. Rael v. Blair*, 2007-NMSC-006, 141 N.M. 232, 153 P.3d 657; *State v. Wynne*, 108 N.M. 134, 136-38, 767 P.2d 373, 375-77 (Ct. App. 1988) (appearing to review de novo what the Legislature intended as the requirements for establishing an enterprise, and to review under a sufficiency standard whether the prosecution's proof was sufficient); *State v. Hughes*, 108 N.M. 143, 146-51, 767 P.2d 382, 385-91 (Ct. App. 1988) (same).

## B.      The Law of Enterprise

{9}      Section 30-42-4(C) states that "[i]t is unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs by engaging in a pattern of racketeering activity." "Enterprise" is defined in the Racketeering Act as "a sole proprietorship, partnership, corporation, business, labor union, association or other legal entity or a group of individuals associated in fact although not a legal entity and includes illicit as well as licit entities[.]" Section 30-42-3(C).

{10}      The State was required to prove the existence of an enterprise as well as a "pattern of racketeering activity." *Hughes*, 108 N.M. at 150, 767 P.2d at 389. Thus, "an enterprise must be more than an individual who conducts his own affairs through a pattern of racketeering." *Rael*, 1999-NMCA-068, ¶ 16 (internal quotation marks and citation omitted). "The existence of an enterprise at all times remains a separate element which must be proved by the [g]overnment." *Hughes*, 108 N.M. at 149, 767 P.2d at 388 (internal quotation marks and citation omitted).

4

**{11}**     The Racketeering Act is similar to and based on the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-68 (1994, as amended through 2009).  *Rael*, 1999-NMCA-068, ¶ 11; *Hughes*, 108 N.M. at 148, 767 P.2d at 387.  A RICO "enterprise" is defined as "includ[ing] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity[.]"  18 U.S.C. § 1961(4). We look to analogous federal cases when we interpret our own racketeering law and in determining what is an enterprise under the New Mexico Racketeering Act.  *See Rael*, 1999-NMCA-068, ¶ 11 (stating that because of the similarity of the federal and state acts federal decisions interpreting RICO are instructive, and stating that we look to analogous federal and state case law); *Hughes*, 108 N.M. at 148, 767 P.2d at 387 (stating that "federal cases interpreting RICO provide valuable guidance to New Mexico courts interpreting our [Racketeering] Act").

**{12}**     Under federal case law, "The enterprise is not the pattern of racketeering activity; it is an entity separate and apart from the pattern of activity in which it engages."  *United States v. Turkette*, 452 U.S. 576, 583 (1981) (internal quotation marks omitted).  An enterprise under RICO is "a group of persons associated together for a common purpose of engaging in a course of conduct," and it is proved by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit."  *Id.*  Similarly, this Court has indicated that the prosecution must prove the following elements in order to establish the existence of an enterprise:  "(1) a common purpose among the participants, (2) organization, and (3) continuity."  *Rael*, 1999-NMCA-068, ¶ 10 (internal quotation marks and citation omitted).

> We believe the factors to be considered in determining the existence of an enterprise include the identity of the individuals involved, their knowledge of the relevant activities, the amount of planning required to carry out the predicate acts, the frequency of the acts, the time span between each act, and the existence of an identifiable structure within the association or entity.

*Id.* (internal quotation marks and citation omitted).

## C.      Sufficiency of the Evidence

**{13}**     The State first contends that Defendant waived his argument that the State failed to prove the element of enterprise.  The State argues that Defendant was required pursuant to Rule 5-601(C) NMRA to object to the indictment before trial and that Defendant's sufficiency of evidence position is tantamount to a defense that the indictment was legally inadequate.  We reject this argument.  The State does not explain why Defendant was obligated to raise evidentiary issues at the time of the indictment or how the indictment was otherwise being attacked by Defendant as inadequate.  The indictment language is hardly factually informative, but it does use statutory language in stating that the enterprise was a sole proprietorship.  A sole proprietorship is defined as "[a] business in which one person owns all the assets, owes all the liabilities, and operates in his or her personal capacity." *Black's Law Dictionary* 1427 (8th ed. 2004).   The indictment does not describe that sole proprietorship entity any further, except to state that the enterprise on occasion operated in association with other entities known as "Henry A. Rivera Enterprises and/or Building [f]or the Future in the purported operation of a real estate investment business."  In addition, the indictment

5

does not describe either of these other entities. The identity of the entities that the State alleged it would eventually prove to be constituting the enterprise element of racketeering were sufficiently stated in the indictment.

{14} We see no basis on which to require Defendant to have tested the legal sufficiency of the enterprise element as a condition precedent to attacking the sufficiency of the State's proof of the existence of an enterprise. We do not read Rule 5-601(C) to have required such a challenge to the enterprise element of the racketeering act at the indictment stage of these proceedings.

{15} On the sufficiency issue, we agree with Defendant that the State failed to present sufficient evidence to prove the existence of an enterprise with which Defendant associated. The State therefore failed to present sufficient evidence for a conviction under Section 30-42-4(C). The State's view in the indictment was that Defendant associated with an undescribed sole proprietorship, that this sole proprietorship was the enterprise, and that this enterprise on occasion acted in association with other undescribed entities identified as "Henry A. Rivera Enterprises" and/or "Building [f]or the Future." The State's position at the time the jury was instructed on the racketeering charge was simply and solely that "Defendant was associated with an enterprise." The State's position on appeal is that the sole proprietorship was one of the entities identified as Henry A. Rivera Enterprises and/or Building for the Future, and that Defendant associated with those entities. The only documentary evidence the State points to in support of its present enterprise theory consists of promissory notes and other documents containing either a letterhead or some other informational designation of Building for the Future or Henry A. Rivera Enterprises. Beyond the foregoing, the State points to no evidence as proof of the existence of "Building for the Future" or "Henry A. Rivera Enterprises" or that they actually constituted legal entities or a group of individuals associated in fact with a common purpose and constituting ongoing organizations or organizations with continuity. It appears that the only testimony regarding the issue of the identity of these entities came from one of the victims, Ms. Leeson, who in answer to the inquiry what "Building for the Future" meant to her stated: "Well, that was Rivera's, his logo, I guess, or whatever from his company, his private company that he had, and was working through. As it says, the Henry A. Rivera Enterprises, and this was his logo that he had all of these at the top of his stationery." This testimony was insufficient to meet the State's burden regarding the enterprise element of a racketeering charge.

{16} The State attempts to overcome the evidence insufficiency by advocating other positions never raised or argued in the district court by the prosecution. On appeal, the State argues that a legal entity constituting an enterprise existed because "other people and organizations were involved, wittingly or unwittingly," pointing to Defendant's insurance firm and to Prudential Insurance Company of America (Prudential) and pointing also to one of the victims who testified that Defendant had indicated that the victim was his "partner." The State also argues that an association in fact existed comprised of Defendant's employees, the pastors and evangelists he exploited, and the participants in the pyramid scheme. Specifically with respect to Defendant's employees, the State contends that because Defendant had a secretary, because a victim noticed a number of people were in Defendant's office and working for him, and because Defendant testified that his wife was the bookkeeper and "knows everything that's going on," the enterprise requirement was satisfied. The State's sole support for its contentions regarding Defendant's wife is a case that is found in a footnote in the State's brief, *McCullough v. Suter*, 757 F.2d 142, 143-44 (7th Cir.

1985). *McCullough* holds that under RICO a sole proprietorship is a legal entity that can be an enterprise unless it "were strictly a one-man show." *Id.* at 144. The court explained that "you cannot associate with yourself, any more than you can conspire with yourself." *Id.*

**{17}**    We reject the foregoing arguments for several reasons. Other than the references to Defendant's employees and the *McCullough* case, the State cites no testimony or other evidence, much less any indication by the prosecutor showing how Prudential, Defendant's insurance firm, or any persons mentioned met the requirements to establish an enterprise, and the State cites no authority to support its arguments. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (stating that to present an issue on appeal for review, a party must submit argument and authority). In addition, the State does not explain how the enterprise, described in the indictment as "a sole proprietorship which on occasion operated in association with an entity known as Henry A. Rivera Enterprises and/or Building [f]or the Future in the purported operation of a real estate investment business," was somehow converted into either a group of individuals associated in fact or into other legal entities. Nor does the State show that legal entities consisting of sole proprietorships called Building for the Future or Henry A. Rivera Enterprises had employees. The inadequate development of evidence in regard to the mere existence of employees in an office, together with the State's failure to charge or argue this theory, did not establish the existence of an enterprise. *See Rael*, 1999-NMCA-068, ¶ 10 (setting out the elements that must be considered in determining the existence of an enterprise).

**{18}**    Finally, the State has not shown where in the record the prosecutor provided any evidence that Henry A. Rivera Enterprises or Building for the Future were anything more than Defendant's logo or Defendant himself. The most that the State has shown is that Defendant used those names either as a logo or a name under which he chose to individually act. We see no legal or factual basis on which to hold that an enterprise existed independent of Defendant and that Defendant was employed by or associated with an enterprise. *See Bd. of County Comm'rs v. Liberty Group*, 965 F.2d 879, 885 (10th Cir. 1992) (stating that under 18 U.S.C. § 1962(c) "it is required that the person and the enterprise engaged in racketeering activities be different entities" and that "a person cannot logically be employed by or associated with himself" (internal quotation marks and citation omitted)).

## II.    The Double-Description, Double Jeopardy Issue

**{19}**    Defendant contends that because the same facts and conduct were shown in order to convict him of six counts of fraud and six counts of securities fraud, he was subjected to double jeopardy under the double-description test of double jeopardy. Double-description cases are those in which a single act results in multiple charges under different statutes. *See Swafford v. State*, 112 N.M. 3, 8, 810 P.2d 1223, 1228 (1991). *Swafford* is New Mexico's benchmark case for analysis of the double-description circumstance in double jeopardy cases. *See id.* at 8-15, 810 P.2d at 1228-35. The double-description, double jeopardy analysis is set out and applied in numerous New Mexico cases following *Swafford. See, e.g.*, *State v. Armendariz*, 2006-NMSC-036, ¶¶ 20-29, 140 N.M. 182, 141 P.3d 526; *State v. Caldwell*, 2008-NMCA-049, ¶¶ 6-20, 143 N.M. 792, 182 P.3d 775. We review the issue de novo. *Armendariz*, 2006-NMSC-036, ¶ 19.

7

**{20}** The district court gave the same fraud and securities fraud instructions with respect to each separate victim. For fraud, the State was required to prove that (1) "[D]efendant, by any words or conduct, misrepresented a fact to [the victim], intending to deceive or cheat [the victim]"; (2) "[b]ecause of the misrepresentation and [the victim's] reliance on it, [D]efendant obtained in excess of $20,000"; (3) "[t]his $20,000 belonged to someone other than . . . [D]efendant"; and (4) "[t]he $20,000 had a market value of over $20,000." For securities fraud, the State was required to prove that (1) "[D]efendant sold a security, namely promissory notes"; (2) "[i]n connection with the sale of the security, . . . [D]efendant purposely and directly or indirectly" either "[e]mployed a device, scheme[,] or artifice to defraud"; and/or "[m]ade an untrue statement of a material fact or failed to state a necessary material fact where such an omission would be misleading"; and/or "[e]ngaged in an act, practice[,] or course of business which operates or would operate as a fraud or deceit upon a person."

**{21}** Defendant argues that the conduct in question was unitary, requiring the analysis to continue to the second part of the *Swafford* inquiry, namely, whether the Legislature intended to criminalize Defendant's conduct as both fraud and securities fraud. Defendant then argues that the statutes under which he was convicted do not provide a clear expression of whether the Legislature intended to allow a person to be punished for both fraud and securities fraud, but concedes that under the *Blockburger* test each offense contains an element the other does not contain, thus raising a presumption that the Legislature intended to punish the offenses separately. *See Blockburger v. United States*, 284 U.S. 299, 304 (1932); *Swafford*, 112 N.M. at 8, 14, 810 P.2d at 1228, 1234.

**{22}** Turning to the final part of the *Swafford* analysis, Defendant states that other indicia of legislative intent overcome the presumption established in *Blockburger*. *See Swafford*, 112 N.M. at 14, 810 P.2d at 1234. Defendant argues that the securities fraud statute is aimed at protecting the public against deceptive and fraudulent practices in the sale of securities, and the fraud statute is aimed at protecting persons from being defrauded of valuable property by misrepresentation. He argues that what weighs against the presumption is that both statutes address the same societal evil, namely, "the dangers of deceiving or tak[ing] advantage of another's property/money" and that both statutes "are part of comprehensive laws designed to protect the public from deception." Defendant adds that "[t]he [L]egislature could not have intended to turn *every* conviction for securities fraud into a fraud conviction." In addition, he argues that the penalties for the crimes are different, fraud over $20,000 is a second degree felony, and securities fraud is a third degree felony. *See id.* at 15, 810 P.2d at 1235 ("Where one statutory provision incorporates many of the elements of a base statute, and extracts a greater penalty than the base statute, it may be inferred that the [L]egislature did not intend punishment under both statutes."); *State v. Fuentes*, 119 N.M. 104, 108-09, 888 P.2d 986, 990-91 (Ct. App. 1994) (clarifying *Swafford*'s analysis regarding the quantum of punishment in considering legislative intent by indicating that where different punishments exist between that in the base statute and that in a statute that increases the penalty for "aggravating conduct," "the Legislature did not intend punishment under both statutes" (internal quotation marks and citation omitted)). Further, he argues that the two crimes are usually committed together. *See State v. Almeida*, 2008-NMCA-068, ¶ 17, 144 N.M. 235, 185 P.3d 1085 ("We also look at whether the crimes are usually committed together; if they are, this factor will weigh against allowing punishment for both charges."). Finally, Defendant relies on the rule of lenity against employment of a presumption to impose multiple punishments, if this Court were to reject his double jeopardy analysis. *See, e.g.*, *Herron v. State*, 111 N.M. 357, 361, 805 P.2d 624, 628 (1991) (discussing

application of the rule of lenity in double jeopardy cases); *see also Swafford*, 112 N.M. at 8, 10, 15, 810 P.2d at 1228, 1230, 1235 (same).

**{23}** Two New Mexico cases specifically address double jeopardy under a double-description analysis in the context of fraud and securities fraud. *See State v. Hornbeck*, 2008-NMCA-039, 143 N.M. 562, 178 P.3d 847; *State v. Ross*, 104 N.M. 23, 715 P.2d 471 (Ct. App. 1986). *Ross* was decided before *Swafford*. *Ross* analyzed the elements of the offenses and determined that the two offenses had different elements and that the two statutes were "entirely different in that each requires proof of facts that the other does not." 104 N.M. at 26-27, 715 P.2d at 474-75. Looking also at legislative intent, *Ross* turned to NMSA 1978, Section 58-13-43(D) (1977) (now codified at Section 58-13B-39(E)), which stated that "[n]othing in this section shall be construed as limiting the power of the state to punish any person for any conduct which constitutes a crime by statute or at common law." *Ross*, 104 N.M. at 27, 715 P.2d at 475. This Court stated that Section 58-13-43(D) was a "clear expression of legislative intent that a defendant may also be convicted and sentenced for both general fraud and securities fraud." *Ross* 104 N.M. at 27, 715 P.2d at 475. *Hornbeck* came to the same conclusion, relying on the application of Section 58-13B-39(E). *See Hornbeck*, 2008-NMCA-039, ¶¶ 19-20. Although *Hornbeck* did not take the reader through a *Swafford* analysis step by step, it appears to us that this Court considered the different elements of the two crimes as well as the different purposes in regard to the social evils addressed. *See Hornbeck*, 2008-NMCA-039, ¶ 20. *Hornbeck* also determined that a unitary-conduct analysis was unnecessary because, even if the conduct was unitary, "the Legislature intended that the prosecutor is afforded discretion in both charging the crimes and seeking separate punishments." *Id.*

**{24}** Understanding that *Hornbeck* and *Ross* present a substantial hurdle for Defendant to overcome, Defendant attempts to distinguish them on the basis that neither case "examined the defendants' particular conduct." Defendant draws on language in *State v. Franco*, 2005-NMSC-013, 137 N.M. 447, 112 P.3d 1104, that "[t]he proper analytical framework is whether '*the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses.*'" *Id.* ¶ 7 (quoting *Swafford*, 112 N.M. at 14, 810 P.2d at 1234) (Defendant's emphasis). We are not persuaded by this tack. The language in *Franco* and *Swafford* on which Defendant relies appears to occur in the context of a unitary-conduct analysis. *See Franco*, 2005-NMSC-013, ¶ 7; *Swafford*, 112 N.M. at 14, 810 P.2d at 1234. In the present case, as in *Hornbeck*, we need not engage in a unitary-conduct analysis, and consistent with *Hornbeck* and *Ross* we hold that the Legislature intended other fraud crimes to be punished separately from securities fraud. *See Hornbeck*, 2008-NMCA-039, ¶ 20. The different elements and distinct purposes set forth in the two statutes are sufficient to recognize the Legislature's separate intentions under Section 58-13B-39(E). Furthermore, Defendant does not describe in what manner the facts play a role here that should cause us to override or distinguish *Hornbeck* or *Ross*. Having recognized an indication of legislative intent, we see no basis on which to apply the rule of lenity in Defendant's favor. *See Swafford*, 112 N.M. at 10, 14-15, 810 P.2d at 1230, 1234-35 (indicating that the rule of lenity will be applied when "other indicia of legislative intent" cannot support the presumption raised after an elements test that the statutes punish separate offenses).

### III.    The Unit-of-Prosecution, Double Jeopardy Issue

**{25}**     Defendant contends that double jeopardy was violated by the six convictions for transacting business as a broker-dealer without a license and the six convictions for selling unregistered securities.  He contends that his acts in connection with each separate offense constituted only one course of conduct and that under a unit-of-prosecution, double jeopardy analysis he could only be convicted of two counts, one of transacting business as a broker-dealer without a license and one of selling unregistered securities.    Unit-of-prosecution cases are those in which multiple punishments result for violations of the same statute.  *State v. Collins*, 2007-NMCA-106, ¶ 18, 142 N.M. 419, 166 P.3d 480.  This unit-of-prosecution, double jeopardy analysis is set out and applied in several New Mexico cases.  *See, e.g.*, *State v. Bernal*, 2006-NMSC-050, ¶¶ 17-31, 140 N.M. 644, 146 P.3d 289; *Collins*, 2007-NMCA-106, ¶¶ 18-22.

**{26}**     In regard to transacting business as a broker-dealer without a license, Defendant argues that the plain meaning of the language of the statute indicates that the Legislature intended to punish a course of conduct.  The statute reads, "It is unlawful for any person to transact business in this state as a broker-dealer . . . unless licensed . . . under the New Mexico Securities Act of 1986."  Section 58-13B-3(A).  Defendant argues that the Legislature intended to punish a person who transacts business and not punish a person for every transaction in which he is involved, since it is implicit in the language that the broker-dealer would transact business more than once.  Defendant argues that even the title of the offense, "Broker-dealer . . . licensing," reflects an intent to punish the unlicensed person and not an intent to punish for each unlicensed transaction.

**{27}**     In regard to the selling of unregistered securities, Defendant argues that the statutory language indicates that the Legislature intended to criminalize selling "some securities of whatever quantity" and not "each specific selling of an unregistered security."  The statute makes it "unlawful for a person to offer to sell or sell any security in New Mexico unless:  (A) the security is registered under the New Mexico Securities Act of 1986; (B) the security or transaction is exempt under that act; or (C) the security is a federal covered security."  Section 58-13B-20.  Defendant contends that the use of the words "any security," with emphasis on "any," is the guide for legislative intent.  Defendant's argument is based on the dictionary definition of "any," set out by him as follows:

> 1.  one (no matter which) of more than two; as, *any* boy may go.  2.  some (no matter how much, how many or what kind); as do you have *any* apples?  3.  even one; the least amount or number of; as I haven't *any* money.  4.  every; as *any* child can tell.
>
> *any* (the pronoun singular and plural):  any person or persons (of more than two); any amount or number.
>
> *any* (the adverb):  to an indefinite extent; at all; in *any* degree; as *any* farther, *any* better, *any* more.

Defendant cites to *Webster's New Universal Unabridged Dictionary* 83 (Deluxe 2d ed. 1983), for his definition of "any."  According to Defendant, "any" cannot mean each specific act of selling an unregistered security but instead "illustrates the [L]egislature's intent to punish a course of conduct—selling unregistered securities."

**{28}** Defendant moves from a plain-language argument to a rule-of-lenity argument. He argues that if this Court were to determine the language of the statute to be ambiguous or we were to determine that there was no clear evidence that the Legislature intended to punish a defendant for every sale, "doubt will be resolved against turning a single transaction into multiple offenses." *Herron*, 111 N.M. at 361, 805 P.2d at 628 (internal quotation marks and citation omitted). Defendant argues that an ambiguous statute or one without clear legislative intent cannot be construed to allow a prosecutor to subdivide a single criminal transaction into numerous temporal fragments unless the intent to allow such fragmentation is clearly expressed in the statute. *See State v. DeGraff*, 2006-NMSC-011, ¶¶ 32-35, 139 N.M. 211, 131 P.3d 61 (applying the rule of lenity together with an analysis of whether the defendant's several acts of tampering with evidence could be divided into discrete acts); *Herron*, 111 N.M. at 360-61, 805 P.2d at 627-28 (applying the rule of lenity and holding that the criminal sexual penetration statute did not "as a matter of law . . . evince a legislative intent to punish separately each penetration occurring during a continuous attack absent proof that each act of penetration [was] in some sense distinct from the others").

**{29}** Defendant also makes what he characterizes as a *Herron* "multi-factor [factual] analysis for determining whether charges of multiple violations of a single statute based on a single course of conduct is proper." He characterizes the State's case as one where Defendant allegedly engaged in a single Ponzi scheme to sell unregistered securities as an unlicensed securities salesman over a period of several years. He adds that the unregistered promissory notes were drafted in a similar manner and the transactions were committed in a similar manner during that time. Therefore, he asserts, it is not the number of investors that should be dispositive, but instead, what is dispositive should be the "one act of selling unregistered securities and one count of transacting a securities business without a license."

**{30}** We are not persuaded that grammatical analysis will assist in resolving the question here. *See DeGraff*, 2006-NMSC-011, ¶ 33 (stating that the Court was "not persuaded that the statute's use of the word 'any' shows the Legislature's intent to permit only a single conviction for all tampering with a single crime scene"); *State v. Morro*, 1999-NMCA-118, ¶ 15, 127 N.M. 763, 987 P.2d 420 ("The parties' arguments make clear that grammatical analysis cannot resolve the issue before us."). The better approach is to follow the guideline set out in *Morro*, where this Court turned to what we characterized as "the *Herron-Barr* analysis." *See Morro*, 1999-NMCA-118, ¶ 15. The *Herron-Barr* analysis requires us to analyze the interests protected by the applicable statute. *Morro*, 1999-NMCA-118, ¶ 15. And, of course, we look to an analysis of what we have characterized as the *Herron-Barr* indicia of distinctness factors, which are "(1) temporal proximity of the acts; (2) location of the victim(s) during each act; (3) existence of an intervening event; (4) sequencing of acts; (5) defendant's intent as evidenced by his conduct and utterances; and (6) number of victims." *Morro*, 1999-NMCA-118, ¶ 19 (internal quotation marks and citation omitted); *see Herron*, 111 N.M. at 361, 805 P.2d at 628; *State v. Barr*, 1999-NMCA-081, ¶ 16, 127 N.M. 504, 984 P.2d 185.

**{31}** The New Mexico securities laws are to protect individuals from falling prey to unscrupulous, fraudulent securities-related practices. *See State v. Kirby*, 2003-NMCA-074, ¶¶ 23-24, 133 N.M. 782, 70 P.3d 772 (stating that the Securities Act has a remedial purpose that is comprehensive, its "provisions are aimed at protecting investors against unfair, deceptive, and fraudulent practices in the sale of securities," and it "was written with all encompassing strokes to protect the public, and to further the legitimate governmental purpose of protecting the public from the many means

11

promoters may use to separate the unwary from their money" (internal quotation marks and citation omitted)).  We fully suspect that persons who are unlicensed often engage in more than one securities-related transaction, and whether they are licensed or not, such persons often attempt to reach more than one investor-victim.  The securities laws anticipate that there can be several transactions and victims.  We see the purpose of the securities laws generally, and the purpose of the licensing of broker-dealers and the securities registration laws specifically, to protect all potential investors.  Those who engage in securities transactions who are not licensed to do so or who deal in unregistered securities and who engage in transactions with more than one investor through fraudulent schemes violate legislative intent to protect each individual investor.

{32}    "The number of victims has been a particularly significant indicator in determining whether acts are distinct" and "a strong indicator of legislative intent to punish distinct conduct that can only be overcome by other factors." *Bernal*, 2006-NMSC-050, ¶ 18.  In the present case, each unlicensed transaction and each sale of an unregistered security were distinct and separate in time, resulting in distinct and separate harm to different victims.  *See DeGraff*, 2006-NMSC-011, ¶ 33 (reading the holding in *Morro* to be based on each act occurring at a distinct time and place each time a gravestone was smashed or defaced and on the fact that there were different victims for each act of vandalism at a different gravestone); *Morro*, 1999-NMCA-118, ¶ 1 (upholding multiple convictions for damaging gravestones even though all damage occurred in a single incident).

{33}    Further, that Defendant may have fulfilled some sort of overall plan or scheme to obtain funds from many victims by deceiving different victims at different times does not somehow mesh or coagulate his actions into but two offenses by labeling an activity to carry out the scheme a "course of conduct."  Thus, the double jeopardy proscription does not require the separate convictions to be merged into one for punishment purposes with respect to either Defendant's unlicensed status or the unregistered security status relating to each transaction.  *See Bernal*, 2006-NMSC-050, ¶ 20 (holding that the evidence supported two separate convictions and punishments for two attempted robberies of two different victims who suffered separate and distinct harms); *State v. Stone*, 2008-NMCA-062, ¶¶ 19-25, 144 N.M. 78, 183 P.3d 963 (holding that the evidence supported eight separate convictions and punishments for contributing to the delinquency of different minors during a party at the defendant's residence), *cert. denied*, 2008-NMCERT-003, 143 N.M. 682, 180 P.3d 1181; *Collins*, 2007-NMCA-106, ¶¶ 21-22 (holding that the evidence supported separate convictions and punishments for sales of securities, namely, renewal notes to different victim-investors).

{34}    Under the foregoing unit-of-prosecution, double jeopardy analyses, we see no multiple-punishment concern, nor do we see any basis on which to apply the rule of lenity in Defendant's favor.

## IV.    The Jury Instruction Issue

{35}    Defendant argues that the district court erred in denying his tendered jury instructions.  He asserts error in refusing to give a securities fraud instruction that required the jury to find a specific intent, arguing that although securities fraud was a general intent crime, it was akin to general fraud, which is a specific intent crime.  He also argues that specific intent is required because securities fraud requires that a defendant "purposely . . . employed a scheme to defraud."  Related to the

foregoing argument, Defendant also asserts error in refusing to give an ignorance or mistake-of-fact instruction based on his alleged reliance on the advice of his attorney that his promissory notes were lawful under the New Mexico securities laws. Defendant states that he testified at trial that he had consulted with his real estate attorney, his banker attorney, a certified public accountant, and a real estate attorney who helped him draw up the notes. He further argues that a mistake-of-fact instruction was necessary so that he could defend by negating the securities fraud mental state of purposely employing a scheme to defraud and also to negate the mindset necessary for the fraud over $20,000 which is a specific intent crime.

{36}   The court did not err in refusing Defendant's requested instruction on specific intent. The court gave the Uniform Jury Instruction for securities fraud. *See* UJI 14-4302 NMRA. Securities fraud is a general intent offense. *See* UJI 14-4302 comm. cmt. Further, inclusion of the word "fraud" in the name of the offense does not show a legislative intent to incorporate all elements of the common law offense. *See Ross*, 104 N.M. at 25, 715 P.2d at 473 (stating that "the elements of general fraud . . . are not necessarily involved in a charge involving fraudulent securities practices under [the statute]"). We note, too, that Section 58-13B-2(J) states that the terms "fraud," "deceit," and "defraud" are "not limited to common-law fraud or deceit[.]" The tendered instruction was therefore correctly denied as misstating the law. *See Hornbeck*, 2008-NMCA-039, ¶ 32 (stating that a tendered instruction that misstated the law on exemptions was properly refused).

{37}   Nor did the court err in refusing Defendant's requested mistake-of-fact instruction. Defendant shows no mistake of fact. He essentially contends that he was ignorant of the law, a theory Defendant cannot successfully advocate. *See State v. Tower*, 2002-NMCA-109, ¶ 9, 133 N.M. 32, 59 P.3d 1264 ("We have often stated that ignorance of the law is no excuse. Every person is presumed to know the law." (citation omitted)). Moreover, a good faith reliance on the advice of counsel is not a defense to a charge of selling unregistered securities. *State v. Shafer*, 102 N.M. 629, 633, 698 P.2d 902, 906 (Ct. App. 1985).

{38}   Furthermore, none of the persons with whom Defendant states he consulted testified at trial. Had consultations occurred, Defendant does not show where he testified that he relied on any particular statement or advice in regard to those aspects of the securities transactions that constituted violations of the securities laws or fraud. A district court is not required to give an instruction that the evidence does not support. *Barr*, 1999-NMCA-081, ¶ 25.

{39}   Finally, Defendant alerts us to the district court's rejection of two instructions, one defining an "isolated transaction" under the securities law, and the other stating that an isolated transaction is an exempt transaction that is not required to be registered. Defendant's entire argument, however, is that the court erred because "[o]ne part of [his] defense was that his transactions were exempt from securities law because there were no more than ten purchasers in the state during twelve consecutive months." *See* § 58-13B-27(U)(1) (stating that a transaction pursuant to an offer to sell securities of an issuer is exempt "if . . . the transaction is part of an issue in which there are no more than ten purchasers in this state during any twelve consecutive months").

{40}   Defendant does not show where he advanced this rationale in the district court. In the district court he argued that the transactions were isolated, a defense based on Section 58-13B-27(A), and his tendered instructions were based solely on his theory that an isolated transaction was an exempt

transaction under the Securities Act. Defendant did not tender a jury instruction on Section 58-13B-27(U). Defendant did not preserve and cannot advance the Section 58-13B-27(U)-based argument he now asserts in his brief in chief. *See Paule v. Santa Fe County Bd. of County Comm'rs*, 2005-NMSC-021, ¶ 29, 138 N.M. 82, 117 P.3d 240 ("Generally, arguments relating to theories, defenses, or other objections will not be considered when raised for the first time on appeal." (internal quotation marks and citation omitted)); *see also* Rule 5-608(D) (explaining that "for the preservation of error in the charge, objection to any instruction given must be sufficient to alert the mind of the court"); Rule 12-216(A) NMRA ("To preserve a question for review[,] it must appear that a ruling or decision by the district court was fairly invoked[.]").

## V.      The Remaining Issues

**{41}**    Defendant raises a number of other issues, each of which is based on *State v. Boyer*, 103 N.M. 655, 659, 712 P.2d 1, 5 (Ct. App. 1985), which states that a defendant has a right to have all his issues raised. These issues, in our view, have no merit and none requires remand or reversal. As to each, Defendant does not provide adequate evidence and argument to support his remaining contentions.

## A.      The Ineffective Assistance of Counsel Issue

**{42}**    Defendant argues that his counsel was ineffective for failing to obtain bank records and for failing to locate and call witnesses for the defense. The record and briefs do not indicate that counsel failed to act in any manner that creates a prima facie case for ineffective assistance of counsel. *See State v. Dylan J.*, 2009-NMCA-027, ¶ 37, 145 N.M. 719, 204 P.3d 44 ("We indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (internal quotation marks and citation omitted)); *State v. Martinez*, 1996-NMCA-109, ¶ 25, 122 N.M. 476, 927 P.2d 31 (recognizing that there is a "preference for habeas corpus proceedings over remand when the record on appeal does not establish a prima facie case of ineffective assistance of counsel").

## B.      The Issue of Error in Failing to Grant a Continuance

**{43}**    This point is a combination of a claim that the prosecutor failed to disclose bank records that it had a duty to disclose, and a claim that the district court erred in denying Defendant a continuance to pursue the records. We see no abuse of discretion on the court's part. The record and briefs do not show prosecutorial misconduct or other failure that prejudiced Defendant or any prejudice to Defendant by the court's refusal to grant a continuance. *See State v. Sanchez*, 120 N.M. 247, 253, 901 P.2d 178, 184 (1995) (stating that the grant or denial of a motion for continuance rests within the sound discretion of the district court, and the burden of establishing an abuse of discretion rests with the defendant); *State v. Nieto*, 78 N.M. 155, 157, 429 P.2d 353, 355 (1967) (indicating that the defendant must show not only that the court abused its discretion, but also that the abuse prejudiced the defendant).

## C.      The Improper Jury Influence Issue

**{44}** Defendant argues that the district court judge's anger directed at Defendant denied him a fair trial and due process because the judge's actions and comments gave the jury the impression that the judge was angry at Defendant. Defendant refers to an incident that occurred when he, while on the witness stand, personally asked the court to grant a continuance in connection with the undisclosed bank records, and the court interrupted Defendant, told him to stop, and then declared a recess. Defendant was escorted from the courtroom. Defendant asserts fundamental error. Our review of the record indicates that the court acted professionally and correctly. We see nothing in the record or in Defendant's brief in chief that indicates that Defendant was prejudiced or denied a fair trial by anything the court said or did. There exists no basis on which to hold that the court erred in any respect or that fundamental error occurred. *See State v. Cunningham*, 2000-NMSC-009, ¶ 21, 128 N.M. 711, 998 P.2d 176 ("Parties alleging fundamental error must demonstrate the existence of circumstances that shock the conscience or implicate a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." (internal quotation marks and citation omitted)).

### D.     The Issue of Denial of a Fair Trial by Not Severing the Racketeering Charge

**{45}** Defendant contends that even if the racketeering conviction is reversed, he was nevertheless denied a fair trial because the district court refused to sever the racketeering charge. His rationale is that he suffered extreme prejudice by the fact that he was tried on the racketeering charge at the same time he was tried on the securities charges involving six victims. He argues that the racketeering-based transactions involving fourteen individuals were used to infer a criminal disposition to commit the securities fraud. We see no basis on which to determine that the court abused its discretion in refusing to sever. *See State v. Peters*, 1997-NMCA-084, ¶ 10, 123 N.M. 667, 944 P.2d 896 ("Severance is a matter within the sound discretion of the trial court and will not be reversed on appeal absent a showing of an abuse of discretion."). Defendant provides nothing but general authority on severance. His arguments are insufficient to show an abuse of discretion.

### E.     The Issue of Denial of a Right to a Speedy Trial

**{46}** Defendant contends that he was denied his right to a speedy trial because of a two-and-one-half-year delay, continuous trial date resettings, assertions of the right to a speedy trial, and prejudice from the delay. We are unpersuaded. This was a complex case whose progress was marred more by Defendant's actions and conduct and little by the State. Defendant went through four different attorneys. Several Rule 5-604 NMRA extensions were required. Defendant waived the six-month rule and agreed to most of the Rule 5-604 extensions. The district court determined that the delay was caused by and, as well, benefitted Defendant in that the delay allowed him and his four different attorneys to better prepare his defense. The court also determined that Defendant acquiesced or concurred to the continuances and that the delay was also due to Defendant's absence from the case. Defendant's early pro forma written demand for a speedy trial filed in October 2003 a few days after his first attorney entered his appearance, and his second pro forma demand filed in May 2004 when his second attorney entered his appearance are of little effect on the issue, and his oral assertion of a violation of a speedy trial made on the first day of trial does not give him any advantage. The record is replete with indications that the delay was defense created, desired, and agreed to. *See Barker v. Wingo*, 407 U.S. 514, 536 (1972) ("[B]arring extraordinary circumstances, we would be

15

reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial."). The State, on the other hand, indicated on the record that it was ready for trial long before the trial commenced. We see no prejudice to Defendant and also note in that regard that Defendant appears to have been absent from the jurisdiction from the time of the indictment in 1994 until his arrest in Mexico in October 2003.

**F.     The Issue of Sufficiency of the Evidence to Convict**

{47}    Defendant contends that there was insufficient evidence to convict him of the crimes of which he was convicted. In our view, the record shows that the evidence of Defendant's guilt on all charges except racketeering was overwhelming. *See In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 15, 121 N.M. 562, 915 P.2d 318 (stating that the question is whether the factfinder's decision is supported by substantial evidence, not whether the factfinder could have a different conclusion).

**CONCLUSION**

{48}    We hold that there was insufficient evidence to convict Defendant of racketeering, and we reverse that conviction and instruct the district court to re-sentence Defendant in accordance with this ruling. We affirm Defendant's remaining convictions.

{49}    **IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**TIMOTHY L. GARCIA, Judge**

**Topical Index for State v. Rivera, No. 27,168**

**AL          ADMINISTRATIVE LAW AND PROCEDURE**
AE-JR       Judicial Review

**AT          ATTORNEYS**
AT-EA       Effective Assistance of Counsel

**CT**          **CONSTITUTIONAL LAW**

CT-DJ          Double Jeopardy

CT-ST          Speedy Trial

**CL**          **CRIMINAL LAW**

CL-FR          Fraud

CL-RK          Racketeering

**CA**          **CRIMINAL PROCEDURE**

CA-DJ          Double Jeopardy

CA-JI          Jury Instructions

CA-RD          Right to Speedy Trial

CA-SE          Substantial or Sufficient Evidence