**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2019-NMCA-069**

**Filing Date: August 8, 2019**

**No. A-1-CA-37230**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**QUINTIN C.,**

      Child-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**Daniel A. Bryant, District Judge**

Released for Publication November 12, 2019.

Hector H. Balderas, Attorney General
Benjamin L. Lammons, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**DUFFY, Judge.**

**{1}** Child appeals his conviction for violating NMSA 1978, Section 30-20-13(D) (1981), which criminalizes willful interference with the educational process by threatening to commit any act that would disrupt the lawful mission, processes, procedures or functions of the school, arguing that the evidence is insufficient to sustain his conviction and that the statute, as applied to his speech in this case, violated his First Amendment rights. Because the record demonstrates that the mens rea element of

this offense was evaluated under an incorrect general intent standard, we reverse and remand for a new trial.

**BACKGROUND**

**{2}**     Child, age fourteen, and J.E., age eleven, were students at Capitan Middle School and High School. The school followed a four-day school week, and during the school bus ride home for the weekend on a Thursday afternoon, J.E. sat across the aisle from Child. J.E. saw that Child had a camera and asked Child to take his picture; Child did so. J.E. asked Child why he brought his camera to school, and Child responded, "I'm making a kill list."

**{3}**     J.E. was bothered by the statement and moved to a different seat. The next morning, he told his mother what had happened, and when school reconvened the following Monday morning, J.E. arrived at 7:15 a.m. and told the school principal, Patti Nesbitt, what Child had said on the bus. Ms. Nesbitt informed the school counselor, Theresa Kennedy, and the two of them spoke with Child that morning. Ms. Nesbitt informed Child that school officials had received a report about his "hit list"; Child corrected her and said that it was a "kill list."

**{4}**     Child did not bring a weapon to school on Monday and when Ms. Nesbitt searched his camera, laptop, and Kindle, she discovered only four photos, all people Child stated were his friends. The photos did not include a photo of J.E. Ms. Nesbitt contacted Defendant's grandmother and Ms. Kennedy called the police. Ms. Nesbitt further testified that the police investigation took about four hours, which interfered with her normal duties.

**{5}**     On January 31, 2018, the State filed a petition alleging that Child was a delinquent child and asserted two counts against him—Count 1 for attempt to commit aggravated assault with intent to commit a violent felony, contrary to NMSA 1978, Section 30-3-3 (1977) ("Assault with intent to commit a violent felony consists of any person assaulting another with intent to kill or commit any murder[.]"), and Count 2 for violation of the school interference statute, contrary to Section 30-20-13(D). One day before trial, the State dismissed Count 1, concluding that it did not have sufficient evidence to prove that charge, and the parties proceeded with a bench trial on Count 2. The State called four witnesses: J.E., Ms. Nesbitt, Ms. Kennedy, and the police chief who participated in the investigation on the date of the incident. The defense called no witnesses. The district court found that Child had committed the delinquent act of violating Section 30-20-13(D) and sentenced him to two years' probation.

**DISCUSSION**

**{6}**     Although Defendant challenges the sufficiency of the evidence to support his conviction, his argument fundamentally challenges whether the evidence in this case constitutes the charged offense. *See State v. Barragan*, 2001-NMCA-086, ¶ 24, 131 N.M. 281, 34 P.3d 1157 ("Although framed as a challenge to the sufficiency of evidence,

[the d]efendant's argument requires us to engage in statutory interpretation to determine whether the facts of this case, when viewed in the light most favorable to the verdict, are legally sufficient to sustain a conviction[.]"), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. The parties disagree on the standard required for conviction under Section 30-20-13(D), including what intent is required and whether the statute itself is unconstitutional as applied in this case because it criminally punishes speech. Thus, in order to evaluate the sufficiency of the evidence to support Child's conviction, we must first evaluate the statutory standard required to sustain a conviction. "Interpreting the relevant statute[] is a question of law, which we review de novo." *State v. Herbstman*, 1999-NMCA-014, ¶ 16, 126 N.M. 683, 974 P.2d 177. "After reviewing the statutory standard, we apply a substantial evidence standard to review the sufficiency of the evidence at trial." *State v. Chavez*, 2009-NMSC-035, ¶ 11, 146 N.M. 434, 211 P.3d 891.

## I.  Section 30-20-13(D)

**{7}**   The Legislature enacted Section 30-20-13 in 1970, a time when states across the country were adopting similar statutory provisions in response to organized disturbances on college campuses. *See In re Jason W.*, 837 A.2d 168, 172-73 (Md. 2003) ("The broadening and focused application of trespass, disorderly conduct, or school disturbance laws was then a national phenomenon."); *id.* at 173 ("The focus in 1970 . . . was on riots and organized demonstrations and disturbances that actually impeded the schools from carrying out their administrative and educational functions."); *see also* Sheldon R. Shapiro, Annotation, *Participation of Student in Demonstration on or Near Campus as Warranting Imposition of Criminal Liability for Breach of Peace, Disorderly Conduct, Trespass, Unlawful Assembly, or Similar Offense*, 32 A.L.R. 3d 551 (1970). The statute originally focused on interference occurring in or at public buildings. *See State v. Silva*, 1974-NMCA-072, ¶¶ 2-3, 86 N.M. 543, 525 P.2d 903 (addressing the constitutionality of a prior version of Section 30-20-13(C) following a sit-in at the Eastern New Mexico University president's office, where police arrested the defendant after the university president repeatedly requested that those present leave). But in 1981, the Legislature added Subsection (D), which provides:

> No person shall willfully interfere with the educational process of any public or private school by committing, threatening to commit or inciting others to commit any act which would disrupt, impair, interfere with or obstruct the lawful mission, processes, procedures or functions of a public or private school.

Section 30-20-13(D). A violation of Subsection (D) is a petty misdemeanor. Section 30-20-13(F).

**{8}**   In its nearly forty-year history, Subsection (D) has not been construed by an appellate court in New Mexico. Federal courts, however, have evaluated the provision in several recent cases when considering whether arresting officers had probable cause to arrest children for actions undertaken at school that interfered with school or

educational functions. *See, e.g.*, *Scott v. City of Albuquerque*, 711 F. App'x 871, 873-74 (10th Cir. 2017) (discussing a middle school student's underlying arrest after leaving class early); *A.M. v. Holmes*, 830 F.3d 1123, 1148 (10th Cir. 2016) (discussing a middle school student's underlying arrest for "repeatedly fake-burping, laughing, and (later) leaning into the classroom"); *Castaneda v. City of Albuquerque*, 276 F. Supp. 3d 1152, 1158 (D.N.M. 2016) (discussing a student's underlying arrest, which occurred after student had forgotten about his in-school suspension and reported to his regularly scheduled class, after which a detective allegedly came to student's classroom, searched his backpack and pockets, handcuffed student with zip ties, and transported him to the juvenile detention center); *G.M. ex rel. B.M. v. Casalduc*, 982 F. Supp. 2d 1235, 1240 (D.N.M. 2013) (discussing a middle school student's underlying arrest after refusing multiple requests to stop texting in class).

**{9}** Our evaluation and interpretation of our school interference statute presents a question of law that we review de novo. *See Chavez*, 2009-NMSC-035, ¶ 10; *see also State v. Granillo*, 2016-NMCA-094, ¶ 13, 384 P.3d 1121 (stating that defining the mens rea applicable to the crime is a question of law that we review de novo). We are guided in our analysis by the longstanding, fundamental principle that "[a] criminal statute must be strictly construed and may not be applied beyond its intended scope for it is a fundamental rule of constitutional law that crimes must be defined with appropriate definiteness." *State v. Stephenson*, 2017-NMSC-002, ¶ 12, 389 P.3d 272 (alteration, internal quotation marks, and citation omitted). "Therefore, we will not read a criminal statute to apply to particular conduct unless the legislative proscription is plain." *Id.* (internal quotation marks and citation omitted).

## A.    Mens Rea

**{10}** We begin our statutory analysis by examining what mental state is required for conviction. Section 30-20-13(D) requires proof that a person "willfully interfere[d]" with the educational process by committing one of three acts set forth in the statute: (1) "committing," (2) "threatening to commit," or (3) "inciting others to commit any act which would disrupt, impair, interfere with or obstruct the lawful mission, processes, procedures or functions of a public or private school." Defendant argues that the statute, by inclusion of the word "willfully," requires proof that he intended that his statement would create a disruption at school. The State argues that only general intent is necessary—that Defendant was aware of what he was doing when he made the threat and that there was no just cause or lawful excuse for making it. *See* 21 Am. Jur. 2d Criminal Law § 113 (2019) (footnote omitted) ("To prove general intent, the state is not obligated to prove an intent to violate a particular statute but rather the intent to do the criminal act that violated the statute; in other words, all that is required is proof that the person acted intentionally in the sense that he was aware of what he was doing."); *see also State v. Brown*, 1996-NMSC-073, ¶ 22, 122 N.M. 724, 931 P.2d 69 ("A general intent crime . . . requires only a conscious wrongdoing, or the purposeful doing of an act that the law declares to be a crime." (internal quotation marks and citation omitted)).

**{11}**    In Section 30-20-13(D), the Legislature declared that a person who "willfully" interferes with the educational process is subject to criminal punishment. "Willfully" connotes an element of mens rea, but the Legislature's use of the word "willfully" in the statute is not dispositive of either specific or general intent—it has been used in both contexts within criminal statutes. *Compare State v. Elliott*, 2001-NMCA-108, ¶ 12, 131 N.M. 390, 37 P.3d 107 (holding that NMSA 1978, Section 31-3-9 (1999), which penalizes the "willful failure to appear," is not a specific intent statute because "[t]he crime of failure to appear does not require any intent to do a further action or achieve a further consequence"), *with Holguin v. Sally Beauty Supply Inc.*, 2011-NMCA-100, ¶¶ 18-19, 29, 150 N.M. 636, 264 P.3d 732 (evaluating statutory provision allowing a merchant to detain a customer who has willfully concealed merchandise and holding that the term "willfully" requires that the customer do more than merely put merchandise out of sight, it also requires a specific intent to convert merchandise without paying for it). Moreover, "willfully" does not enjoy a universal definition in New Mexico and has not otherwise been defined by statute or uniform jury instruction.[1] Nevertheless, "willfully" is regularly equated with the concept of intentional conduct. *See, e.g.*, *Anderson v. Territory*, 1887-NMSC-019, ¶ 3, 4 N.M. 213, 13 P. 21 (" 'Willfully' means that the act charged was intentionally done, and was not the result of accident or misfortune." (internal quotation marks and citation omitted)); *Willful, Black's Law Dictionary* (11th ed. 2019) (defining "willful" as "[v]oluntary and intentional, but not necessarily malicious"); *id.* (defining "willfulness" as "[t]he quality, state, or condition of acting purposely or by design; deliberateness; intention").

**{12}**    Applying this meaning, Section 30-20-13(D) punishes "intentional interference" with the educational process, thus indicating that a violation of the school interference statute occurs when interference is the intended result, as opposed to an inadvertent or unintentional consequence. The Tenth Circuit Court of Appeals recently construed the intent requirement in Section 30-20-13(D) similarly, stating that the "New Mexico [L]egislature sought to bar conduct that was *designed to* 'interfere with the educational process,' rather than conduct that merely happened to have that effect." *Scott*, 711 F. App'x at 877; *id.* at 876 ("The word 'willfully' suggests that a violation occurs only when a person acts with the conscious objective of 'interfering with the educational process.' " (alteration omitted)). "In other words, it is not enough that a person simply commits an act that disrupts the functions of a school; to violate [S]ection 30-20-13(D), that person must act with the conscious purpose of interfering with the educational process." *Id.* at 876 (alterations, omission, internal quotation marks, and citation omitted)). We agree with this reading. So construed, Section 30-20-13(D) refers to a defendant's intent to

---

[1]*State v. Billington*, 2009-NMCA-014, ¶ 13, 145 N.M. 526, 201 P.3d 857 (" 'Willfully' denotes the doing of an act without just cause or lawful excuse." (quoting *State v. Masters*, 1982-NMCA-166, ¶ 8, 99 N.M. 58, 653 P.2d 889)); *State v. Elliott*, 2001-NMCA-108, ¶ 63, 131 N.M. 390, 37 P.3d 107 (same); *State v. Rosaire*, 1996-NMCA-115, ¶ 16, 123 N.M. 250, 939 P.2d 597 ("We interpret 'willfully,' as used in [NMSA 1978,] Section 33-2-46 [(1980)], to mean a conscious, purposeful failure to return within the time fixed as distinguished from an involuntary failure to return."), *aff'd*, 1997-NMSC-034, ¶ 15, 123 N.M. 701, 945 P.2d 66; *State v. Elmquist*, 1992-NMCA-119, ¶ 3, 114 N.M. 551, 844 P.2d 131 ("The term 'willful' has been defined as requiring proof that the person acted intentionally in the sense that he was aware of what he was doing."); *State v. Sheets*, 1980-NMCA-041, ¶ 48, 94 N.M. 356, 610 P.2d 760 ("To meet the willfulness requirement, all that is required is proof that the person acted intentionally in the sense that he was aware of what he was doing.").

"do some further act or achieve some additional consequence"—interference with the educational process—and therefore, Section 30-20-13(D) is a specific intent crime. *State v. Bender*, 1978-NMSC-044, ¶ 7, 91 N.M. 670, 579 P.2d 796 ("When the definition refers to [the] defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent." (internal quotation marks and citation omitted)).

## B.    Actus Reus

**{13}**    The actus reus of the offense in this case is "threatening to commit any act which would disrupt, impair, interfere with or obstruct the lawful mission, processes, procedures or functions of a public or private school." Section 30-20-13(D). Child argues that when Section 30-20-13(D) is used to punish threats, the statute unconstitutionally regulates speech. The State responds that Child's words constituted a "true threat" and are not constitutionally protected speech.

**{14}**    While "[t]he First Amendment to the United States Constitution prohibits the government from enacting laws abridging the freedom of speech[,] . . . neither the United States nor the New Mexico Constitution[2] provides an absolute right to free speech." *Best v. Marino*, 2017-NMCA-073, ¶ 23, 404 P.3d 450 (stating that certain categories of speech are not protected by the First Amendment, including "advocacy intended, and likely, to incite imminent lawless action; obscenity; defamation; speech integral to criminal conduct; so-called 'fighting words'; child pornography; fraud; true threats; and speech presenting some grave and imminent threat the government has the power to prevent" (internal quotation marks and citations omitted)), *cert. denied*, 2019-NMCERT-___ (No. S-1-SC-36586, Aug. 31, 2017). True threats enjoy no constitutional protection, and to the extent Section 30-20-13(D) is used to punish true threats, as the State contends here, the statute does not run afoul of the First Amendment. *See State v. Garcia*, 2013-NMCA-005, ¶¶ 20-21, 294 P.3d 1256 (stating that conduct that constitutes a true threat "is outside the realm of First Amendment protection"); *see also Virginia v. Black*, 538 U.S. 343, 344 (2003) ("[T]he First Amendment permits a State to ban 'true threats,' which encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals[.]" (citations omitted)).

**{15}**    When a true threat is involved, the mens rea standard described above is what distinguishes criminal school interference from assault, also a petty misdemeanor. *See* NMSA 1978, § 30-3-1(B) (1963) (stating that "assault" consists of a "threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery"). Section 30-20-13(D) addresses the effect threats are intended to have upon the educational process, rather than the effect they have upon the person; as the State correctly observed, Section 30-20-13(D) "is designed to allow

---

2The parties did not raise any argument under Article II, Section 7 of the New Mexico Constitution, or argue that it provides greater protection than its federal counterpart. *See State v. Gomez*, 1997-NMSC-006, ¶¶ 22-23, 122 N.M. 777, 932 P.2d 1 (discussing the interstitial approach to preserving a question under the New Mexico Constitution).

schools to teach and students to learn without interference." The State, having chosen to prosecute Child under Section 30-20-13(D) for school interference, must therefore prove that Child made a threat and that when making the threat, Child intended to interfere with the educational process.

## II.    Substantial Evidence

**{16}**    Having clarified the standard for a conviction, we turn to the evidence presented at trial to determine whether Child's conviction is supported by sufficient evidence. The district court made thorough and detailed findings at the conclusion of trial and we begin by reviewing the district court's findings on the mens rea element:

> Turning to the mens rea issue, the court finds that . . . when you look at the UJI that talks about intent and mens rea, we are able to discern intent not merely from what is said or from testimony that would elicit what did you mean [and] what did you want, but we are able to look at all of the facts and circumstances in the case. And on the willfulness circumstance, the court finds these factors . . . in our evidence today sufficient to satisfy the burden beyond a reasonable doubt: Number one, the way the conversation occurred between [J.E.] and [Child] on the bus is such that there is this curious conversation going on about the camera. . . . And when you examine the time progression of that testimony, the conversation went to . . . "Why do you have the camera?" And our [Child] looks at the young man he just took a picture of, and he says, "I'm making a kill list." And I think that supports a willfulness standard in this case. Then, turning to the balance of it, when we get to school on Monday and we have a conversation about a "hit list," the correction is made to a "kill list." And so I find that . . . those two circumstances *demonstrate the willfulness and demonstrate the elements of general intent necessary* to support a finding that [Child] committed the delinquent act of violating [Section] 30-20-13(D).

(Emphasis added.) In finding that the willfulness element was satisfied, the district court focused on whether Child intended to make the statement—the general intent standard—rather than whether Child's intention in making the statement was to interfere with the educational process. The district court did not make any findings regarding Child's specific intent to interfere with the educational process. Certainly, the district court should not be faulted given the absence of any prior interpretation of Section 30-20-13(D) by a New Mexico appellate court. Nevertheless, given our interpretation of Section 30-20-13(D), it appears that an incorrect legal standard was applied to determine Child's guilt. *See State v. Gonzales*, 1999-NMCA-027, ¶ 9, 126 N.M. 742, 975 P.2d 355 ("It is a bedrock principle of appellate practice that appellate courts do not decide the facts in a case. Fact-finding is the task of the trial judge or the jury. Our role is to determine whether the lower court has applied the law properly.").

**{17}** "In a bench trial, the trial judge takes the place of the jury as the finder of fact[,]" and "[i]n this respect, the situation in this appeal is similar to an appeal predicated upon an error in an instruction of law given to a jury." *State v. Meisel*, 2011-Ohio-6426, ¶ 43 (holding that the trial court applied an incorrect legal standard to the elements of self-defense and reversing and remanding to the trial court to apply the correct law to the facts). In circumstances where the jury is incorrectly instructed on an element at issue in the case, our Supreme Court has said that "the error could be considered fundamental: The question of guilt would be so doubtful that it would 'shock the conscience' of this Court to permit the conviction to stand." *State v. Orosco*, 1992-NMSC-006, ¶ 9, 113 N.M. 780, 833 P.2d 1146. Further, " '[i]f an instruction is facially erroneous it presents an incurable problem and mandates reversal.' " *State v. Suazo*, 2017-NMSC-011, ¶ 26, 390 P.3d 674 (holding that the jury instruction misstated the mens rea element of second-degree murder and was therefore error requiring reversal (internal quotation marks and citation omitted)). Because the record indicates that the district court applied an incorrect legal standard to an essential element of this offense, we are compelled to reverse Child's conviction. *See, e.g.*, *State v. Wiborg*, 396 P.3d 258, 259-60 (Or. Ct. App. 2017) (reversing and remanding for a new trial after the appellate court concluded that "the trial court applied an incorrect legal standard with regard to [an] element of the offense and, thus, did not make a finding on an element necessary to convict."); *Commonwealth v. Scott*, 176 A.3d 283, 292 (Pa. Super. Ct. 2017) ("The trial court erred by applying an incorrect legal standard and finding [the defendant] guilty[.] . . . Accordingly, [the court] must vacate the judgment of sentence and remand for a new trial.").

**{18}** Because we reverse, "we are required to determine whether sufficient evidence was presented to support [the] conviction[] to avoid double jeopardy concerns should the [s]tate seek to retry [Child]." *State v. Samora*, 2016-NMSC-031, ¶ 34, 387 P.3d 230; *State v. Dowling*, 2011-NMSC-016, ¶ 18, 150 N.M. 110, 257 P.3d 930 ("If we find that sufficient evidence was presented at trial to support a conviction, then retrial is not barred."). "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]" *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted). Reviewing courts "view the evidence in the light most favorable to the guilty verdict[.]" *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. As with our review when defective jury instructions mandate reversal, we evaluate whether the evidence was sufficient to sustain a conviction not under the instructions that should have been given, but rather, under the erroneous jury instructions that were given. *See Dowling*, 2011-NMSC-016, ¶ 18.

**{19}** Applying the general intent standard pursuant to *Dowling*, we hold that sufficient evidence was presented at trial to support the conviction. *See id.* The district court made detailed findings about Child's initial statement on the bus and his actions when

questioned about it on Monday morning, concluding that "all of those circumstances satisfy a concern that there might be a propensity to actually engage in that conduct." The State presented testimony that Child, after being asked why he had his camera at school and taking a picture of another student, said the reason he had his camera was that he was making a kill list. After J.E. reported the incident to the principal, Ms. Nesbitt, on Monday morning, she asked Child about it, saying there was a report of a "hit list." He corrected her and said, "No, it's a 'kill list.' " Ms. Nesbitt interpreted this to mean a list involving targets and that students might be in jeopardy. Ms. Nesbitt further testified that she took the statement seriously and felt she needed to call the police when Child corrected her from "hit list" to "kill list" and because a student was afraid and felt threatened. Further, as set forth above, the district court relied on Child's initial statement and his repetition and clarification of those words on Monday morning, without condition, explanation, or indication that he was not serious, to support a finding that Child willfully made his "kill list" statements. We agree with this analysis under the general intent approach employed by the district court. Viewing the evidence in the light most favorable to the verdict, we conclude that sufficient evidence supported the conviction, and retrial is therefore permissible.

**CONCLUSION**

**{20}** For the foregoing reasons, we reverse Child's conviction and remand for a new trial consistent with this opinion.

**{21}  IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**JACQUELINE R. MEDINA, Judge**