The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **June 6, 2025**

**No. A-1-CA-41515**

**STATE OF NEW MEXICO,**

  Plaintiff-Appellee,

v.

**DAMIAN VALERIO,**

  Defendant-Appellant.

**APPEAL FROM THE METROPOLITAN COURT OF BERNALILLO COUNTY**
**Christine Rodriguez, Metropolitan Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**DUFFY, Judge.**

{1}   Following a jury trial in metropolitan court, Defendant Damian Valerio was convicted of one count of use of telephone to terrify, intimidate, threaten, harass, annoy or offend, contrary to NMSA 1978, Section 30-20-12 (1967), and one count of stalking, contrary to NMSA 1978, Section 30-3A-3 (2009), for sending a series of threatening text messages to his ex-girlfriend over a two-day period. Defendant appeals both convictions, asserting first that the telephone harassment statute does not encompass text messages, and therefore, the State presented insufficient evidence to convict him of telephone harassment. For the reasons discussed below, we agree with Defendant on this point and reverse his conviction for telephone harassment.

{2}   Defendant raises five additional arguments: (1) the jury instruction given for the telephone harassment charge misled the jury; (2) the conduct underlying both convictions was the same, thus violating his right to be free from double jeopardy; (3) the text messages were inadmissible; (4) the metropolitan court erred in extending the 182-day rule by an additional thirty days; and (5) the State presented insufficient evidence to support the stalking conviction. These arguments provide no additional grounds for reversal. Accordingly, we affirm in part and reverse in part.

**BACKGROUND**

{3}    At trial, the State presented evidence that Defendant and Victim had previously been in a relationship and shared custody of their five-year-old son (Child). Victim reported receiving a series of threatening text messages from a phone number she did not recognize beginning on the evening of October 12, 2022, following a dispute with Defendant over Child at day care pickup. The messages continued through the morning of October 13, 2022. The contents of the messages included threats of bodily harm and death. The sender threatened to take Child, whom the sender referred to as "my son," and referred to an encounter with Victim earlier that day at the day care center. The messages also referred to Victim's job and threatened her with harm at her place of business.

{4}    The next morning, Victim went to the courthouse to get information about a restraining order Defendant said he had taken out against her. While Victim was there, Defendant approached her with two police officers, who served her with a restraining order and placed Child with Defendant. Afterward, Victim received six additional text messages from the unknown number, in which the sender called her derogatory names, referred to the custody dispute, and told Victim to watch her back.

## DISCUSSION

## I.   Telephone Harassment

{5}   Defendant appeals his conviction for telephone harassment on the basis that Section 30-20-12 applies only to telephone calls, and does not apply to text messages. Although Defendant frames his argument as a challenge to the sufficiency of the evidence, "his argument fundamentally challenges whether the evidence in this case constitutes the charged offense." *State v. Quintin C.*, 2019-NMCA-069, ¶ 6, 451 P.3d 901. This issue requires us to interpret the telephone harassment statute, with the primary goal of giving effect to the Legislature's intent in drafting the statute. *See State v. Vest*, 2021-NMSC-020, ¶ 14, 488 P.3d 626.

{6}   "Interpreting the relevant statute is a question of law, which we review de novo." *Quintin C.*, 2019-NMCA-069, ¶ 6 (alteration, internal quotation marks, and citation omitted). We must "first look to the plain language of the statute to determine if the statute can be enforced as written." *State v. Padilla*, 2008-NMSC-006, ¶ 7, 143 N.M. 310, 176 P.3d 299. Only if the language of the statute is "doubtful, ambiguous, or an adherence to the literal use of the words would lead to injustice, absurdity, or contradiction, [should] the court . . . reject the plain meaning rule in favor of construing the statute according to its obvious spirit or reason." *Id.* (internal quotation marks and citation omitted).

{7}     Section 30-20-12 is titled, "Use of telephone to terrify, intimidate, threaten, harass, annoy or offend," and states in full:

> A.     It shall be unlawful for any person, with intent to terrify, intimidate, threaten, harass, annoy or offend, *to telephone another* and use any obscene, lewd or profane language or suggest any lewd, criminal or lascivious act, or threaten to inflict injury or physical harm to the person or property of any person. It shall also be unlawful for any person to attempt by telephone to extort money or other thing of value from any other person, or to otherwise disturb *by repeated anonymous telephone calls* the peace, quiet or right of privacy of any other person at the place where *the telephone call or calls* were received, or to maliciously *make a telephone call*, whether or not conversation ensues, with intent to annoy or disturb another, or to disrupt the telecommunications of another.
>
> B.     The use of obscene, lewd or profane language or the making of a threat or statement as set forth in Subsection A shall be prima facie evidence of intent to terrify, intimidate, threaten, harass, annoy or offend.
>
> C.     Any offense committed by use of a telephone as set forth in this section shall be deemed to have been committed at either the place where *the telephone call or calls* originated or at the place where *the telephone call or calls* were received.
>
> D.     Whosoever violates this section is guilty of a misdemeanor, unless such person has previously been convicted of such offense or of an offense under the laws of another state or of the United States which would have been an offense under this section if committed in this state, in which case such person is guilty of a fourth degree felony.

(Emphases added.)

{8}     The plain language of Section 30-20-12(A) makes it unlawful to "telephone another," and refers to "telephone call or calls," as shown in the emphasized language above. Section 30-20-12(C) similarly focuses on "telephone call or calls."

*See Energy Pol'y Advocs. v. Balder*as, 2024-NMCA-081, ¶ 13, 560 P.3d 37 ("The entire statute must be read as a whole so that each provision may be considered in its relation to every other part." (alteration, internal quotation marks, and citation omitted)). The statute makes no reference to text messages or any other form of electronic communication.

{9}     In looking at "the words chosen by the Legislature and the plain meaning of the Legislature's language," we also consider "the context in which it was enacted, taking into account its history and background." *Id.* ¶ 13 (internal quotation marks and citation omitted). Section 30-20-12 was enacted in 1967 and has not been amended since. There is little doubt, given the technology existing at the time, that the Legislature did not intend the terms "to telephone another" or "telephone call or calls" to include the sending of text messages; the meaning of those terms as understood in 1967 simply did not include text messages.[1] This history and context informs our understanding of the words chosen by the Legislature.

{10}     The State acknowledges that the statutory language contemplates telephone calls specifically, but argues the phrase "to telephone another" can be interpreted to

---

[1]*See* Rosie Dobson et. al., *Don't Forget the Humble Text Message: 25 Years of Text Messaging in Health* (2024), https://pmc.ncbi.nlm.nih.gov/articles/PMC11688580/ ("In December 1992, the first SMS text message was sent. It contained the words 'Merry Christmas' and was sent by a 22-year-old software programmer from the United Kingdom. It took several more years for text messaging to become a standard means of communication from mobile phone to mobile phone." (citation omitted)).

apply to text messages. In support, the State relies on modern dictionary definitions that define "telephone," when used as a verb, to mean "to send a message by telephone." *See Telephone*, https://www.dictionary.com/browse/telephone (last visited May 25, 2025); *Telephone, Merriam-Webster's Collegiate Dictionary*, https://www.merriam-webster.com/dictionary/telephone (last visited May 25, 2025). The State also points out that Section 30-20-12's title supports a broader interpretation because it prohibits "use of a telephone" without any express limitation to phone calls. *See Tri-State Generation & Transmission Ass'n v. D'Antonio*, 2012-NMSC-039, ¶ 18, 289 P.3d 1232 ("For the purpose of determining the legislative intent we may look to the title, and ordinarily it may be considered as a part of the act if necessary to its construction." (internal quotation marks and citation omitted)).[2] The State has not, however, addressed the statute's history or the context in which it was enacted, nor has the State said why the plain meaning of the phrase "to telephone another" can be considered ambiguous such that further construction is necessary. *See State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶3, 117 N.M. 346, 871 P.2d 1352 (indicating that we will not depart from the plain language of a statute unless it is necessary to resolve an ambiguity or absurdity).

[2]The State also notes that the federal Telephone Consumer Protection Act "prohibits automated text messages under the umbrella of 'phone calls.'" However, 47 U.S.C. § 227(a)(4) expressly defines the term "telephone solicitation" to mean "the initiation of a telephone call or message," thus distinguishing the TCPA's statutory language from the telephone harassment statute at issue here.

{11} The State nevertheless contends the legislative intent underlying the statute is "to protect people from the proscribed conduct—i.e., harassment by *use* of a telephone," and asks us to construe the statutory language broadly to include text messages. We decline to do so in light of "the longstanding, fundamental principle that a criminal statute must be strictly construed and may not be applied beyond its intended scope for it is a fundamental rule of constitutional law that crimes must be defined with appropriate definiteness." *Quintin C.*, 2019-NMCA-069, ¶ 9 (alteration, internal quotation marks, and citation omitted). "Therefore, we will not read a criminal statute to apply to particular conduct unless the legislative proscription is plain." *State v. Stephenson*, 2017-NMSC-002, ¶ 12, 389 P.3d 272 (internal quotation marks and citation omitted). Here, the legislative proscription does not plainly apply to text messages or other electronic communications. To adopt the State's proposed construction would violate the strict construction principle and effectively require us to read the phrase "to telephone another" to mean "to call or send electronic communications to another." We are mindful that "[t]he Legislature knows how to include language in a statute if it so desires." *State v. Greenwood*, 2012-NMCA-017, ¶ 38, 271 P.3d 753 (alteration, internal quotation marks, and citation omitted). To that end, the Legislature has chosen to criminalize conduct involving electronic communications or text messages specifically in a

variety of other contexts, but has not amended Section 30-20-12(A) to do the same.[3] For all of these reasons, we decline to construe the statute broadly or read language into the statute here. *See High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599 ("The court will not read into a statute . . . language which is not there, particularly if it makes sense as written." (internal quotation marks and citation omitted)).

{12}    Finally, the State argues that a plain language construction will lead to absurd results in a time when "text messaging is considered the prevalent form of communication in the United States." According to the State, "[t]o conclude that the primary form of cell phone communication does not qualify as "use of a telephone"

---

[3]*See, e.g.*, NMSA 1978, § 30-37-3.2(A) (2007) (prohibiting child solicitation by electronic communication); NMSA 1978, § 30-37-3.3 (2007) (prohibiting the sending of obscene images to a child by means of an electronic communication device); NMSA 1978, § 30-22-14(C)(5) (2013, amended 2024) (defining "contraband" to mean "an electronic communication or recording device brought onto the grounds of the institution for the purpose of transfer to or use by a prisoner"); NMSA 1978, § 30-37A-1(B)(1) (2015) (prohibiting the unauthorized distribution of sensitive images by an electronic communications device, which is defined to mean "a computer, an internet web site or page, a video recorder, a digital camera, a fax machine, a telephone, a cellular telephone, a pager or any other device that can produce an electronically generated image, message or signal"); NMSA 1978, § 30-16-24.1(C)(1) (2009) (criminalizing "obtaining identity by electronic fraud" and defining "fraudulent electronic communication" to mean, in relevant part, "a communication by a person that is an electronic mail message, web site or any other use of the internet"); NMSA 1978, § 66-7-374(A) (2014) ("A person shall not read or view a text message or manually type on a handheld mobile communication device for any purpose while driving a motor vehicle."); NMSA 1978, § 22-35-2(B) (stating that "'cyberbullying' means any bullying that takes place through electronic communication").

9

would render the telephone harassment statute partially useless" and "might permit violent, threatening text messages to be sent in New Mexico with no legal consequences." Even if text messaging is more prevalent than telephone calls, we are not persuaded that a plain language reading would either render the telephone statute useless or preclude legal consequences for the type of harassment that occurred here. The State concedes that multiple threatening text messages could amount to stalking in certain circumstances, and that threatening or harassing text messages could be prosecuted under the general harassment statute, *see* NMSA 1978, § 30-3A-2 (1997). We acknowledge that telephone harassment and general harassment carry different maximum penalties—a violation of the telephone harassment statute is initially a misdemeanor but can, with multiple infractions, be charged as a fourth-degree felony, *see* § 30-20-12(D), while a violation of the general harassment statute is only ever a misdemeanor, *see* § 30-3A-2(B). But this fact alone does not persuade us to adopt a broader construction of telephone harassment in the absence of specific statutory language proscribing such conduct as criminal.

{13}     Considering the statute's language, history, and purpose, we conclude that a plain language reading of the telephone harassment statute is consistent with the Legislature's intent in enacting Section 30-20-12. The conduct proscribed by Section 30-20-12(A), as drafted by the Legislature and read in light of the plain language of the statute, is "calling" someone on the telephone with the intent to "terrify,

10

intimidate, threaten, harass, annoy or offend." Though telephones have evolved and the manner in which they are used has changed considerably since 1967, any broadening of the conduct proscribed by Section 30-20-12 is a matter for the Legislature, not this Court. *See generally Perea v. Baca*, 1980-NMSC-079, ¶ 23, 94 N.M. 624, 614 P.2d 541 ("If a change in the statute is necessary or proper, that is a task for the Legislature."); *M.D.R. v. State ex rel. Hum. Servs. Dep't*, 1992-NMCA-082, ¶ 13, 114 N.M. 187, 836 P.2d 106 ("[I]t is not the function of the court of appeals to legislate. Correction of whatever inequity exists in such a situation is best left to the [L]egislature." (citation omitted)).

{14} Based on the foregoing, we conclude that the State failed to present sufficient evidence that Defendant violated Section 30-20-12. The evidence presented at trial established only that Defendant sent text messages to Victim, and the State did not introduce any evidence that Defendant made a threatening telephone call or calls to Victim. We reverse Defendant's conviction for telephone harassment and remand to the metropolitan court for resentencing. Given this disposition, it is unnecessary for us to consider Defendant's additional arguments concerning the jury instruction for this charge and whether his convictions for both telephone harassment and stalking violate his right to be free from double jeopardy.

## II. Admissibility and Authentication of Text Messages

{15} Defendant contends that the metropolitan court erred in admitting the text messages as evidence at trial, arguing that (1) certain messages should have been excluded because they were undated, and (2) the messages were not properly authenticated. "We review the [trial] court's decision to admit or exclude evidence for an abuse of discretion." *State v. Guerra*, 2012-NMSC-014, ¶ 36, 278 P.3d 1031.

{16} The metropolitan court admitted only those text messages that correlated to the dates in the criminal complaint, October 12 and 13, 2022. In determining that these messages were relevant and admissible, the court rejected Defendant's contention that each message needed to explicitly show the date it was received. The court reasoned that the nature of how text messages are displayed on phones meant that although the date stamp would not necessarily appear above each message, the time stamp would demonstrate that the messages were part of a larger string of text messages sent on the same date as the first message in the string. We perceive no abuse of discretion in the court's ruling. *See State v. Jesenya O.*, 2022-NMSC-014, ¶ 10, 514 P.3d 445 ("We cannot say the [trial] court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." (internal quotation marks and citation omitted)).

{17} Defendant also contends the State failed to properly authenticate the text messages, given that the messages were sent from an unknown phone number. At a

hearing on this issue, Victim testified that she had known Defendant for eight years, that the two have a child together, that she was familiar with how he texts, and that she was aware he would sometimes use "other numbers if his phone was broken or turned off." Victim also testified that the subject matter of the text messages comported with factual circumstances surrounding the parties' current circumstances and their shared child. Having reviewed the entirety of the record, we conclude that Victim's testimony was sufficient to authenticate the text messages, and the trial court's decision to admit the messages was not "clearly against the logic and effect of the facts and circumstances of the case." *See id.* (internal quotation marks and citation omitted).

## III.   182-Day Rule

{18}   Defendant argues that the metropolitan court erred in granting a thirty-day extension of time in violation of Rule 7-506(B) NMRA, which requires trial to commence within 182 days of a triggering event. After reviewing the record, it appears Defendant neither objected to the extension nor filed a motion to dismiss. As such, this claim of error is unpreserved and we decline to consider it further. *State v. Martinez*, 2008-NMCA-052, ¶ 10, 143 N.M. 773, 182 P.3d 154 ("In order to preserve an issue for appeal, it must appear that the appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." (alteration, internal quotation marks, and citation omitted)).

13

## IV.  The State Presented Sufficient Evidence of Stalking

{19}  Finally, Defendant argues that the State presented insufficient evidence to support his stalking conviction, asserting that the State failed to produce evidence linking him to the text messages sent to Victim from an unknown number. The test to determine sufficiency is "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314. "A reviewing court must view the evidence in the light most favorable to the state, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict." *Id.* This court "does not weigh the evidence and may not substitute its judgment for that of the fact finder so long as there is sufficient evidence to support the verdict." *Id.* Where "a jury verdict in a criminal case is supported by substantial evidence, the verdict will not be disturbed on appeal." *Id.*

{20}  To establish Defendant as the author of the messages, the State presented the text messages themselves, the content of which referred to Child as "my son," referenced the custody dispute over Child, referred to a restraining order that Defendant had obtained, and stated the sender was sitting outside of Child's day care. In conjunction, the State introduced evidence that Defendant appeared at Child's day care at the same time as Victim, and appeared at the courthouse at the

14

same time as Victim. Shortly after encountering Defendant at the courthouse, Victim received a message saying that Defendant "got [the child] just like I told you I would," referring to the fact that law enforcement had just given Defendant custody of the child. Considering the contents of the text messages and the context in which they were received, the specific details that correlated to Defendant's encounters with Victim, and Victim's additional testimony regarding Defendant's style of messaging, there was sufficient evidence from which the jury could conclude that Defendant was the author of the messages. Viewing the evidence in the light most favorable to the verdict, we conclude sufficient evidence supported the jury's verdict, and affirm Defendant's conviction for stalking.

**CONCLUSION**

{21}    For the foregoing reasons, we reverse Defendant's conviction for telephone harassment and remand to the metropolitan court for resentencing. Defendant's conviction for stalking is affirmed.

{22}    **IT IS SO ORDERED.**

_____
**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

_____
**SHAMMARA H. HENDERSON, Judge**

_____
**KATHERINE A. WRAY, Judge**

15