The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: April 4, 2023

**No. A-1-CA-38640**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**JOEL HIXON,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Douglas R. Driggers, District Court Judge**

Raúl Torrez, Attorney General
Emily Tyson-Jorgenson, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**MEDINA, Judge.**

{1}    Defendant Joel Hixon appeals his convictions of fraud (over $20,000) (NMSA 1978, § 30-16-6(F) (2006)); conspiracy to commit fraud (over $20,000) (Section 30-16-6(F) and NMSA 1978, § 30-28-2 (1979)); securities fraud (NMSA 1978, § 58-13C-501 (2009)); sale of a security by an unlicensed agent (NMSA 1978, § 58-13C-402(A) (2009)); and offer or sale of an unregistered security (NMSA 1978, § 58-13C-301 (2009)). Defendant argues: (1) it was reversible error to deny Defendant's request to instruct the jury on a higher level of intent for securities fraud, sale of an unregistered security, and sale of a security by an unlicensed agent; (2) it was fundamental error to allow the jury to convict Defendant on legally insufficient grounds for securities fraud; (3) it was fundamental error to fail to instruct the jury on the legal definitions of "effect" and "agent" for sale of a security by an unlicensed agent; and (4) there was insufficient evidence to support his convictions for fraud and conspiracy to commit fraud. For reasons stated below, we affirm.

**BACKGROUND**

{2}    The following facts are based on evidence presented during Defendant's trial. In 2009, Defendant met Dain Schult (his codefendant at trial, and defendant in the related case. *See State v. Schult*, A-1-CA-38693, mem. op. (N.M. Ct. App. Aug. 24, 2021) (nonprecedential)). Schult told Defendant about his company, American

Radio Empire, Inc. (ARE)[1], and that he intended to purchase local radio stations and put their programming on the internet. Schult needed investors for his company, and was selling securities that guaranteed either a repayment on the money invested or stock options in ARE. Defendant and his wife invested $1,500 dollars, and Defendant knew he would earn a "finder's fee" or "consultant fee" if Defendant brought other investors into ARE.

{3}     Defendant encouraged his friends and associates to invest in ARE, including Frank Orphey, Daniel Worley, and Stephen Smith. Defendant pitched ARE to the potential investors, and either introduced or referred each person to Schult to make investments. Each investor was told that the securities purchased gave stock options in the company and that the investment would be used to take the company public and to purchase radio stations. Orphey and Smith knew that Defendant was likely receiving some amount of compensation for referring them to Schult. Worley was unaware that Defendant would be compensated.

{4}     Orphey invested $25,000 in three payments. On the day of Orphey's third payment, Defendant received $1,000, and an additional $500 a few days later. Worley invested $29,600 in three payments. Defendant received $400 the day after the first payment and $3,600 the day of the second payment. A few days after the

---

[1] The name of the company was later changed to "American Wireless & Entertainment" in 2012. Because ARE is the name most commonly used at Defendant's trial, we refer to the company as ARE throughout the opinion.

second payment, Defendant received an additional $2,000. Smith invested $10,000 in one payment. Defendant received $2,000 the day of the investment, $200 the following day, and an additional $1,800 about two weeks later.

{5}     In 2011, Defendant approached Laura and Curt Miller (collectively, the Millers) about ARE and encouraged them to invest. Like the other investors, Defendant introduced the Millers to Schult. Defendant hosted both the Millers and Schult at his home to discuss investing in ARE. The Millers then met with Schult in Texas to further discuss the investment. The Millers decided to invest $25,000. The same day the Millers invested, Defendant received $12,500—$5,000 labeled as a "finder's fee" and $7,500 labeled as a "consulting fee."

{6}     Laura Miller testified that she was told the investment would be used to take the company public, pay attorney fees, and overhead. Defendant told Laura that ARE needed $25,000 and that Defendant had personally invested $25,000. Laura testified that she was not aware Defendant would receive compensation for her investment, much less half of her investment, and had she known, she would not have invested her money. Laura also testified that she did not receive repayment, interest, or stock for her investment, even after contacting both Defendant and Schult. In 2015, Laura filed a complaint with the Securities Fraud Division.

{7}     Curt Miller testified that Defendant similarly told him that Defendant had personally invested $25,000 and that this amount was the minimum required to

3

invest in ARE. Like Laura, Curt was told that the money would be used to take the company public. Curt stated that his decision to invest would have been affected if he had been aware Defendant only invested $1,500 and that Defendant would be compensated from their investment.

{8}     Financial records for ARE showed that over a six-year period, ARE received $532,744.84 from investments into the company, out of a total income of $556,776.51. During that time period, Schult received $277,866 in payments from ARE into his personal account. From January 2010 to June 2011 ARE paid Defendant just over $30,000. The financial records also revealed that Defendant found more than the four investors that Defendant originally indicated. The financial records showed additional investments into ARE and additional transfers into Defendant's account.

{9}     According to the State's financial analysis expert, the majority of investors and debts were paid off using money obtained from new investors—a practice commonly referred to as a Ponzi scheme. The expert testified that only $24,372.72, or a little more than 4.3 percent of the money in ARE's account, was spent on multimedia-related expenses, with the majority of the remainder being spent by Schult on a variety of personal or tangential expenses. Only $56,990.72, or less than 10.18 percent of total income, was paid back out to investors under the terms of the securities Schult and Defendant sold.

{10} Although not part of the record, Defendant tendered jury instructions that added the term "purposefully" or "willfully" to the instructions for securities fraud, sale of an unregistered security, and sale of a security by an unlicensed agent. Defendant argued that out-of-state authority and NMSA 1978, Section 58-13C-508 (2009) supported his position that the appropriate mens rea for those crimes was specific intent, rather than general intent. The district court denied Defendant's jury instructions and provided the jury with a general criminal intent instruction for the securities offenses.

{11} The jury convicted Defendant of one count of fraud (over $20,000); one count of conspiracy to commit fraud (over $20,000); one count of securities fraud; one count of sale of a security by an unlicensed agent; and one count of offer or sale of an unregistered security. This appeal followed.

**DISCUSSION**

{12} We begin by addressing Defendant's argument that he was entitled to jury instructions requiring a higher level of intent for the securities offenses. We hold that the plain language of the securities criminal penalty statute only requires a general intent instruction, and therefore the district court did not commit reversible error by denying Defendant's instructions. We next address Defendant's other challenges to the jury instructions, and hold that the jury instructions did not create fundamental error. We then address Defendant's arguments that there was

insufficient evidence to support his convictions for fraud and conspiracy, and hold that there was sufficient evidence to convict Defendant.

**I.      Jury Instructions**

{13}      The standard of review we apply to jury instructions depends on preservation. "If the error has been preserved we review the instructions for reversible error. If not, we review for fundamental error." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134. "Under both standards, we seek to determine whether a reasonable juror would have been confused or misdirected by the jury instruction." *Id.* (internal quotation marks and citation omitted). We consider jury instructions on review as a whole, not singly. *See State v. Montoya*, 2003-NMSC-004, ¶ 23, 133 N.M. 84, 61 P.3d 793. To the extent that we must interpret the law, we do so de novo. *See State v. Ochoa*, 2008-NMSC-023, ¶ 10, 143 N.M. 749, 182 P.3d 130.

{14}      Defendant first argues that the jury should have been instructed on a greater level of intent for securities fraud, sale of an unregistered security, and sale of a security by an unlicensed agent. Defendant next argues that there was fundamental error in the securities fraud instruction because the instruction allowed the jury to convict Defendant on legally insufficient grounds for that crime. Finally, Defendant argues that the jury should have been instructed on the legal definitions of "effect" and "agent" for the sale of a security by an unlicensed agent. Because Defendant preserved his argument that the jury instructions for the securities offenses should

require a higher level of intent, we review it for reversible error. *See Benally*, 2001-NMSC-033, ¶ 12. We review the remaining arguments for fundamental error. *See id.*

**A.      The District Court Did Not Err in Refusing Defendant's Instructions for Securities Fraud, Sale of an Unregistered Security, and Sale of a Security by an Unlicensed Agent**

{15}      Defendant contends that the denial of his tendered jury instructions for the securities offenses was reversible error because we should impose a higher level of intent for those crimes than general criminal intent. "A jury instruction is proper, and nothing more is required, if it fairly and accurately presents the law." *State v. Laney*, 2003-NMCA-144, ¶ 38, 134 N.M. 648, 81 P.3d 591.

{16}      The district court here gave the Uniform Jury Instructions (UJI) for securities fraud, sale of an unregistered security, and sale of a security by an unlicensed agent. *See* UJI 14-4301 NMRA (offer or sale unregistered securities; essential elements), UJI 14-4302 NMRA (fraudulent practices; sale of securities; essential elements). In accordance with the UJI committee commentary, the district court instructed the jury on general criminal intent using the general criminal intent UJI. *See* UJI 14-4301 comm. cmt., UJI 14-4302 comm. cmt. The instruction read in part, that "the [S]tate must prove to your satisfaction beyond a reasonable doubt that . . .[D]efendant acted intentionally when he committed the crime. A person acts intentionally when he

7

purposely does an act which the law declares to be a crime, even though he may not know that his act is unlawful." UJI 14-141 NMRA.

{17}   We have previously affirmed the use of a general intent instruction for these securities offenses. In *State v. Rivera*, the defendant argued that the district court erred "in refusing to give a securities fraud instruction that required the jury to find a specific intent." 2009-NMCA-132, ¶ 35, 147 N.M. 406, 223 P.3d 951. The defendant argued that a specific intent instruction was appropriate because securities fraud "requires that a defendant purposefully employed a scheme to defraud." *Id.* (text only). This Court held that the district court did not err in refusing the defendant's request when only giving the UJI for securities fraud because "[s]ecurities fraud is a general intent offense." *Id.* ¶ 36 (citing UJI 14-4302 comm. cmt.).

{18}   Similarly, in *State v. Shafer*, the defendants argued that the district court erred in failing to take judicial notice of Texas securities law statutes because the defendants relied on their Texas counsel's advice that they complied with Texas law when selling securities for a Texas based company in New Mexico. 1985-NMCA-018, ¶¶ 4-5, 8, 102 N.M. 629, 698 P.2d 902. This Court affirmed the district court because good faith reliance on the advice of counsel is not a defense to a charge of selling unregistered securities. *Id.* ¶ 9. This Court clarified that "sale of unregistered securities is not a crime requiring proof of specific intent" and that the state "is only

8

required to prove that a defendant acted intentionally in the sense that he was aware of what he was doing." *Id.* ¶ 10.

{19} Defendant argues however that the crimes at issue require a mens rea of specific intent, rather than general intent. As such, we turn to the language of the statutes themselves. We do so because whether the jury instructions in this case fairly and accurately presented the appropriate mens rea is a question of statutory interpretation as "it is the Legislature that defines crimes." *State v. Willis*, 1982-NMCA-151, ¶ 18, 98 N.M. 771, 652 P.2d 1222 (Wood, J., specially concurring). We therefore turn to the language of the three criminal statutes to determine whether the Legislature identified them as general intent crimes.

{20} "In interpreting statutes, we seek to give effect to the Legislature's intent, and in determining intent we look to the language used and consider the statute's history and background." *Valenzuela v. Snyder*, 2014-NMCA-061, ¶ 16, 326 P.3d 1120 (internal quotation marks and citation omitted). "New Mexico courts have long honored this statutory command through application of the plain meaning rule, recognizing that when a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 37, 147 N.M. 583, 227 P.3d 73 (citation omitted) (text only). "The statute or statutes, whose construction is in question, are to be read in connection with other statutes

concerning the same subject matter." *Wild Horse Observers Ass'n v. N.M. Livestock Bd.*, 2022-NMCA-061, ¶ 8, 519 P.3d 74 (internal quotation marks and citation omitted). "Statutes must also be construed so that no part of the statute is rendered surplusage or superfluous, and we will not read into a statute language which is not there." *Am. Fed'n of State, Cnty. & Mun. Emps.* (*AFSCME*) *v. City of Albuquerque*, 2013-NMCA-063, ¶ 5, 304 P.3d 443 (text only).

{21}     Securities fraud, sale of an unregistered security, and sale of a security by an unlicensed agent are defined in the New Mexico Uniform Securities Act (NMUSA), NMSA 1978, Section 58-13C-101 to -701 (2009, as amended through 2010). The NMUSA defines securities fraud as follows:

> It is unlawful for a person, in connection with the offer, sale or purchase of a security, directly or indirectly:
>
> A.     to employ a device, scheme or artifice to defraud;
>
> B.     to make an untrue statement of a material fact or to omit to state a material fact necessary in order to make the statement made, in light of the circumstances pursuant to which it is made, not misleading; or
>
> C.     to engage in an act, practice or course of business that operates or would operate as a fraud or deceit upon another person.

Section 58-13C-501.

{22}     The NMUSA prohibits the sale of a security by an unlicensed agent: "It is unlawful for an individual to transact business in New Mexico as an agent unless the

10

individual is registered pursuant to the [NMUSA] as an agent" or falls into an exception listed in Section 58-13C-402(B). Section 58-13C-402(A).

{23} Finally, the NMUSA prohibits the offer or sale of an unregistered security as follows:

> It is unlawful for a person to offer or sell a security in New Mexico unless:
>
> A.    the security is a federal covered security;
>
> B.    the security, transaction or offer is exempted from registration pursuant to Sections [58-13C-201] through [58-13C-203] of the New Mexico Uniform Securities Act; or
>
> C.    the security is registered pursuant to the New Mexico Uniform Securities Act.

Section 58-13C-301.

{24} We also look to the criminal penalty section of the NMUSA for the three securities offenses to assist in our analysis. Section 58-13C-508 states that "[a] person who willfully violates Sections [58-13C-]501 or [58-13C-]502 of the [NMUSA] is guilty of a third degree felony" and "[e]xcept as provided in Subsections A through C of this section, a person who willfully violates any provision of the [NMUSA] or a rule adopted or order issued pursuant to that act is guilty of a fourth degree felony." Section 58-13C-508(A), (D).

11

{25} The NMUSA defines "willfully" as "purposely or intentionally committing the act or making the omission and does not require an intent to violate the law or knowledge that the act or omission is unlawful." Section 58-13C-508(F).

{26} Reviewing the plain language of Section 58-13C-508(A), (C), and (F), we hold that securities fraud, sale of an unregistered security, and sale of a security by an unlicensed agent only require that the state prove a defendant acted with general criminal intent. Section 58-13C-508(F) requires only proof of the act or omission at issue. This is identical to New Mexico's requirement of proof for a general intent crime. *See State v. Brown*, 1996-NMSC-073, ¶ 22, 122 N.M. 724, 931 P.2d 69 ("A general intent crime, however, requires only a conscious wrongdoing, or the purposeful doing of an act that the law declares to be a crime" (internal quotation marks and citation omitted)); *see also State v. Quintin C.*, 2019-NMCA-069, ¶ 10, 451 P.3d 901 ("To prove general intent . . . all that is required is proof that the person acted intentionally in the sense that he was aware of what he was doing." (internal quotation marks and citation omitted)). In contrast, a "specific-intent crime is defined as one for which a statute expressly requires proof of intent to do a further act or achieve a further consequence." *Brown*, 1996-NMSC-073, ¶ 22 (internal quotation marks and citation omitted).

{27} The Legislature's use of the term "willfully" might create ambiguity because "willfully" is not dispositive of either specific or general intent when describing the

12

element of mens rea. *See Quintin C.*, 2019-NMCA-069, ¶ 11. But any ambiguity dissipates in the face of the Legislature's clear language that, in the NMUSA, the term willfully "*does not require an intent to violate the law or knowledge that the act or omission is unlawful.*" Section 58-13C-508(F) (emphasis added).

{28} Adopting Defendant's argument would require that we ignore Section 58-13C-508(F)'s definition of the term "willfully" and replace it with language describing specific intent. We will not do so. *See AFSCME*, 2013-NMCA-063, ¶ 5 ("Statutes must also be construed so that no part of the statute is rendered surplusage or superfluous, and we will not read into a statute language which is not there." (citation omitted) (text only)).

{29} Here, "[u]nder the plain meaning rule, when a statute's language is clear and unambiguous, we will give effect to the language and refrain from further statutory interpretation." *State v. Hubble*, 2009-NMSC-014, ¶ 10, 146 N.M. 70, 206 P.3d 579 (internal quotation marks and citation omitted). Therefore, we conclude that the plain language of Section 58-13C-508(F) establishes that general criminal intent is the appropriate mens rea for the crimes of securities fraud, sale of an unregistered security, and sale of a security by an unlicensed agent. As such, the district court correctly denied Defendant's requested instructions and correctly instructed the jury on general criminal intent by giving UJI 14-141.

{30} We also find Defendant's reliance on Section 58-13C-508(E) to support his claim that each of the offenses are not general intent crimes misplaced because Section 58-13C-508(E) applies to violations of orders or rules enacted pursuant to the statute, not violations of the statute itself. *Compare* Section 58-13C-508(E), *with* 58-13C-508(F).

{31} Having concluded that the Legislature identified each of the three crimes as general intent crimes, we decline to address Defendant's federal and out-of-state authorities. We see no reason to discuss them further when the issue presented here is answered by the plain language of Section 58-13C-508(F) and our own case law.

{32} Because we conclude the securities offenses are general intent crimes, we reject Defendant's alternative argument that the district court should have granted his requested jury instructions. Defendant argues that the district court's failure to do so allowed the jury to convict him for Schult's omissions when there was evidence disputing whether Defendant knew Schult was omitting relevant information or misrepresenting facts. *See State v. Boyett*, 2008-NMSC-030, ¶ 12, 144 N.M. 184, 185 P.3d 355 ("When considering a defendant's requested instructions, we view the evidence in the light most favorable to the giving of the requested instruction." (citation omitted) (text only)). But this presumption applies if there is factual or evidentiary support for a defendant's theory of the case, not if the defendant's requested instruction is contrary to established law. *See id.* (stating

a defendant is entitled to his requested instruction if evidence supports it); *see also Rivera*, 2009-NMCA-132, ¶ 36 (stating that a tendered instruction is correctly denied if it misstates the law).

{33}     Since we hold that the securities offenses are general intent crimes, refusing Defendant's request to instruct the jury on a higher level of intent was not reversible error.

**B.     The Securities Fraud Instruction Did Not Amount to Fundamental Error**

{34}     Defendant next argues that his conviction for securities fraud is legally insufficient because the jury instruction, similarly to his previous argument, allowed Defendant to be convicted for Schult's omissions. Defendant also argues that we should apply persuasive federal authority to require an affirmative fiduciary duty to exist for a defendant to be convicted of securities fraud based upon omissions.

{35}     The jury instruction for securities fraud provided the jury with three alternatives to establish the second element of securities fraud. The State must prove Defendant (1) "used a plan or scheme to deceive or cheat others"; (2) "made an untrue statement of fact that under the circumstances would have been important or significant to the investment decision of a reasonable person"; or (3) "omitted a fact that under the circumstances would have been misleading to the investment decision of a reasonable person." When an element is charged in the alternative, and the jury returns a general verdict, the conviction will stand so long as at least one of the

alternative theories of guilt is supported by sufficient evidence. *See State v. Olguin*, 1995-NMSC-077, ¶ 2, 120 N.M. 740, 906 P.3d 731. However, the conviction must be reversed if one of the alternative bases of a conviction in the jury instructions is legally inadequate. *See id.* The jury instruction did not provide a legally insufficient basis for conviction. We explain.

{36}    The district court gave the securities fraud UJI, which instructed the jury on the correct elements for securities fraud. As such, there is no concern that an essential element of the crime is missing—the common cause for finding a jury instruction legally invalid. *See State v. Mailman*, 2010-NMSC-036, ¶ 12, 148 N.M. 702, 242 P.3d 269. Defendant's argument that we should require an additional element of an affirmative, fiduciary duty is contrary to the language of Section 58-13C-501. Section 58-13C-501 requires the State to establish one of the alternatives listed in the jury instruction here, and does not require an affirmative duty to disclose information to commit securities fraud. Section 58-13C-501. Again, we will not read into a statute any words that are not there. *AFSCME*, 2013-NMCA-063, ¶ 5.

{37}    We also find Defendant's argument that the jury could have convicted him based on the omissions of Schult unpersuasive. There is little to support this in the record before us on appeal. Instead, the district court gave the jury separate jury instructions for Defendant and Schult which instructed the jury that each charge should be considered separately for each defendant. "The jury is presumed to follow

the court's limiting instructions." *State v. Woodward*, 1995-NMSC-074, ¶ 21, 121 N.M. 1, 908 P.2d 231 (text only), *abrogated on other grounds as recognized by State v. Montoya*, 2014-NMSC-032, 333 P.3d 935. The State also clearly delineated separate misrepresentations and omissions for Defendant and Schult during closing arguments for the charge of securities fraud. The possibility that the jury convicted Defendant based solely on the acts of Schult is too speculative to amount to fundamental error.

{38}     Defendant additionally argues that the State cannot rely on the finder's fee agreement to show Defendant's intent because the State failed to show Defendant knew he would be compensated from the Millers' investment. While framed as a legal sufficiency challenge, this argument is better understood as a sufficiency of the evidence challenge because Defendant is arguing that the State failed to prove an element of securities fraud. As such, we address this argument below with Defendant's other sufficiency challenges.

{39}     Finally, we decline to address Defendant's argument that the State failed to establish Defendant was guilty under a theory of accomplice liability for Schult's omissions. As observed above, our review shows Defendant made his own misrepresentations and omissions to the Millers. Therefore, we hold there was no fundamental error in the securities fraud instruction because Defendant was not convicted on legally insufficient grounds.

17

**C.    The District Court Was Not Required to Instruct the Jury on the Legal Definitions of "Effect" and "Agent"**

{40}    Defendant argues that the failure to instruct the jury on the definitions of "effect" and "agent" for sale of a security by an unlicensed agent could have allowed the jury to convict Defendant for appropriate conduct or conduct that was only tangential to the transaction. Defendant also contends that he was simply a "finder" of investors, and it is unclear if Section 58-13C-402(A) requires a finder to register. We disagree and explain.

{41}    The jury was instructed that Defendant "was required to be registered as an agent with the State of New Mexico prior to the offer for sale" of the security and that Defendant "was not registered as an agent as required by the state securities law" to convict on sale of a security by an unlicensed agent. Under Section 58-13C-402(B)(2), an individual who represents an issuer with an offer or sale of a security is exempt from registration if the individual "is not compensated in connection with the individual's participation by the payment of commissions or other remuneration based, directly or indirectly, on transactions in those securities." But if the individual is compensated, they are not exempt from the registration requirement. Section 58-13C-402(A).

{42}    The State presented evidence that Defendant—whether as a finder, agent, consultant, or on commission—was compensated after each investment Defendant brought in, Defendant knew he would be compensated, and that Defendant originally

18

presented the investment opportunity before introducing the Millers to Schult. Regardless of how Defendant described his relationship with Schult, under Section 58-13C-402(A) and Section 13C-402(B)(2), Defendant was required to register because he was compensated for his efforts. Because the issue here was Defendant's compensation, we see no reason to instruct the jury on the definitions of "effect" or "agent." Therefore, we hold that the failure to instruct the jury on these definitions does not amount to fundamental error.

{43}    For all the foregoing reasons, we conclude that a reasonable juror would not have been confused or misdirected by the jury instructions presented at Defendant's trial. We therefore affirm Defendant's convictions for securities fraud, sale of a security by an unlicensed agent, and offer or sale of an unregistered security.

## II.    Sufficiency of the Evidence

{44}    We next address Defendant's argument that there was insufficient evidence to establish his convictions for securities fraud, fraud, and conspiracy to commit fraud. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Ford*, 2019-NMCA-073, ¶ 7, 453 P.3d 471 (internal quotation marks and citation omitted). "We view the evidence in the light most favorable to the guilty verdict, indulging in all reasonable inferences and resolving all conflicts in the evidence in

favor of the verdict." *Id.* (internal quotation marks and citation omitted). "We disregard all evidence and inferences that support a different result." *Id.*

{45}   "Despite our deferential approach, our responsibility is to ensure that the jury's decisions are supported by evidence in the record, rather than a mere guess or conjecture." *Id.* ¶ 8 (internal quotation marks and citation omitted). "Our inquiry requires that we distinguish between conclusions based on speculation and those based on inferences." *Id.* (citation omitted) (text only). "A reasonable inference is a conclusion arrived at by a process of reasoning which is a rational and logical deduction from facts admitted or established by the evidence." *Id.* (internal quotation marks and citation omitted). We hold that the State presented sufficient evidence to convict Defendant.

**A.   Sufficient Evidence Supports Defendant's Conviction for Securities Fraud**

{46}   We begin with Defendant's argument that the State cannot rely on the finder's fee agreement to show Defendant's intent for the crime of securities fraud because the State failed to show Defendant knew he would be compensated from the Millers' investment. We disagree.

{47}   Here, the State presented evidence that Defendant received immediate payments after inducing investments, Defendant likely induced more investments that he originally indicated or admitted, and Defendant knew he would be compensated after each investment he found. Defendant also misrepresented his own

20

personal investment and minimum amount required to invest to the Millers to purposefully increase their investment, and Defendant omitted that he would be compensated if the Millers invested. "[I]ntent is usually established by circumstantial evidence." *State v. Mercer*, 2005-NMCA-023, ¶ 24, 137 N.M. 36, 106 P.3d 1283. We hold this evidence is sufficient to support the jury's finding that Defendant acted with criminal intent. Therefore, we hold that there was sufficient evidence to establish Defendant's intent and to convict Defendant of securities fraud. *See Ford*, 2019-NMCA-073, ¶ 7.

**B.      Sufficient Evidence Supports Defendant's Fraud Conviction**

{48}      To prove Defendant was guilty of fraud, the jury was instructed, in relevant part, that the State must prove beyond a reasonable doubt (1) "[D]efendant, by any words or conduct, made a promise he had no intention of keeping, or misrepresented a fact to [the Millers], intending to deceive or [the Millers]"; and (2) "because of the promise or misrepresentation and [the Millers'] reliance on it, [D]efendant obtained over $20,000." *See State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883 ("Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured.").

{49}      As to the first element, the State presented evidence that Defendant misrepresented his own personal investment in the company, misrepresented the minimum investment requirement, and omitted the fact that he would be paid based

upon the Millers' investment. "A misrepresentation for purposes of criminal fraud may include a deceptive silence or omission." *State v. Garcia*, 2015-NMCA-094, ¶ 15, 356 P.3d 45, *rev'd on other grounds*, 2016-NMSC-034, 384 P.3d 1076. These facts, in combination with evidence that Defendant received immediate payments after inducing people to invest, Defendant found more investors that he originally indicated or admitted, and Defendant knew he would be paid for each investor he found, support the jurors' reasonable inference that Defendant intended to deceive the Millers with his misrepresentations and omissions. *See Mercer*, 2005-NMCA-023, ¶ 24.

{50}   Defendant argues that the evidence was insufficient because the evidence does not show Defendant "made a promise [with] no intention of keeping it." But this is one of two alternative methods of showing Defendant intended to deceive the Millers. Because the State presented evidence of one possible method—Defendant misrepresented a fact—the State did not need to also establish that Defendant made a promise that he had no intention of keeping.

{51}   Defendant also argues that the evidence did not show an intent to deceive the Millers, but only an intent to earn money under the finder's fee agreement. However, based upon the evidence presented and as discussed above, a reasonable jury could infer that Defendant intended to deceive the Millers so that he would earn money under the finder's fee agreement.

**{52}** For the second element, the State must show (1) that a particular misrepresentation of fact (2) caused the victim to act in a way the victim would not have otherwise acted. *See State v. Garcia*, 2016-NMSC-034, ¶¶ 18-20, 384 P.3d 1076. The State presented evidence that the Millers would not have invested if they were aware that Defendant misrepresented the amount that he personally invested and omitted that he would be paid based upon their investment. Finally, because of Defendant's misrepresentation of the minimum investment amount, Defendant obtained $25,000 from the Millers.

**{53}** Defendant argues that the evidence does not support that the Millers actually relied on Defendant's misrepresentations because other evidence showed that the Millers were more financially sophisticated than Defendant and had repeatedly rejected other investment opportunities from Defendant. Defendant's arguments ask this Court to reweigh the evidence and the credibility of the Millers, as well as consider contrary evidence to the jury verdict. We decline to do so. Considering evidence and assessing the credibility of witnesses is the unique purview of the jury. *See State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532 ("[W]e resolve all disputed facts in favor of the [s]tate, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." (internal quotation marks and citation omitted)); *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 ("Contrary evidence supporting acquittal does not provide

23

a basis for reversal because the jury is free to reject [the d]efendant's version of the facts."); *see also State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057 ("New Mexico appellate courts will not invade the jury's province as a fact-finder by second-guessing the jury's decision concerning credibility." (citation omitted) (text only)).

**{54}** Finally, Defendant argues that the evidence does not show he obtained $20,000. Rather, the evidence shows that he personally obtained only half of the Millers' investment—$12,500. Consequently, Defendant argues he could only be found guilty of a third degree felony. *Compare* Section 30-16-6(F) (stating fraud over $20,000 is a second degree felony), *with* Section 30-16-6(E) (stating fraud over $2,500 but not more than $20,000 is a third degree felony). Defendant misunderstands the word "obtained" in the jury instructions. "The essence of fraud is a taking or misappropriation, and the crime is complete when that occurs." *State v. Higgins*, 1988-NMCA-072, ¶ 8, 107 N.M. 617, 762 P.2d 904. "The value of the property determines the degree of the offense and must be proven by the [s]tate." *State v. Martinez*, 1979-NMCA-104, ¶ 14, 95 N.M. 795, 626 P.2d 1292 (internal quotation marks and citation omitted); *see also* Section 30-16-6(B)-(F) (defining the degree of the offense based upon "the value of the property misappropriated or taken"). Here, Defendant's fraud misappropriated $25,000, which is sufficient to

convict Defendant of a second degree felony, regardless of the amount Defendant personally obtained after committing the fraud.

**{55}** We, therefore, hold that there was sufficient evidence to establish the two elements at issue and to convict Defendant of fraud (over $20,000). *See Ford*, 2019-NMCA-073, ¶ 7.

**C.      Sufficient Evidence Supports Defendant's Conspiracy to Commit Fraud Conviction**

**{56}** To prove Defendant was guilty of conspiracy to commit fraud, the jury was instructed, in relevant part, that the State must prove beyond a reasonable doubt that "[D]efendant and the other person intended to commit fraud (over $20,000)." *See Smith*, 1986-NMCA-089, ¶ 7. For the crime of conspiracy, "[a]n overt act is not required, and the crime of conspiracy is complete when the felonious agreement is reached." *State v. Walters*, 2007-NMSC-050, ¶ 42, 142 N.M. 644, 168 P.3d 1068. "Such an agreement need not been proven by direct evidence; the agreement may be in the form of a mutually implied understanding and may be inferred from circumstantial evidence." *Id.* (internal quotation marks and citation omitted).

**{57}** As discussed above, the State presented evidence of repeated dealings between Defendant and Schult where Defendant knew he would be paid from people's investments. Defendant encouraged the Millers to invest and introduced the Millers to Schult. Defendant misrepresented and omitted relevant information, and

25

the investment was not used for the purpose Defendant and Schult indicated when inducing the investment.

{58}     Defendant argues that the evidence does not support that Defendant entered into an agreement with Schult to defraud investors. Defendant contends that the State is conflating Defendant's intent to bring in investors with a shared intent to defraud. We disagree. Our review of the evidence shows sufficient evidence to establish a mutually implied understanding between Defendant and Schult. *See State v. Gardner*, 1985-NMCA-084, ¶¶ 21, 32, 103 N.M. 320, 706 P.2d 862 (finding sufficient evidence of intent for conspiracy to commit fraud where the defendant "actively participated in deceptive sales pitch practices made to prospective customers"); *State v. Thoreen*, 1978-NMCA-024, ¶¶ 47, 49, 91 N.M. 624, 578 P.2d 325 (holding that there was substantial evidence to find an implied mutual understanding for conspiracy to commit fraud where the defendant and coconspirator raised money ostensibly for the construction of houses, but did not use the money for its intended purpose).

{59}     We therefore hold that there was sufficient evidence to establish Defendant's intent and to convict Defendant of conspiracy to commit fraud (over $20,000). *See Ford*, 2019-NMCA-073, ¶ 7.

**CONCLUSION**

{60}     For the foregoing reasons, we affirm.

**{61}** **IT IS SO ORDERED.**

_____
**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

_____
**KRISTINA BOGARDUS, Judge**

_____
**SHAMMARA H. HENDERSON, Judge**

27